FILED



**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ADVANTUS, CORP.,
a Florida corporation,

          Plaintiff,

v.

Case No. 3:13-cv-1430-J-32-PDB

JEFF ALLEN, an individual,
BERT HERRING, an individual, and
BIO FIBER SOLUTIONS INTERNATIONAL,
INC., a California corporation,

          Defendants.

_____/

## COMPLAINT

Plaintiff, Advantus, Corp. ("Advantus"), sues Defendants, Jeff Allen ("Allen"),

Bert Herring ("Herring"), and Bio Fiber Solutions International, Inc. ("BFSI"), and

alleges:

1.     This is an action for final injunctive relief and damages in excess of

$75,000, exclusive of interest, costs, and attorneys' fees.

### Nature of the Case

2.     Advantus owns the exclusive distribution rights for North America for an

alternative fiber paper product made in India from sugarcane fiber and marketed in North

America under the name "Canefields." Advantus acquired its exclusive distribution

rights through a distribution agreement it entered with Defendant, Jeff Allen, and his

wholly owned company, Canefields USA, LLC ("C-USA"). Advantus paid Allen and C-

USA money for the exclusive distribution rights and further agreed to continue to pay

certain royalties to C-USA in conjunction with Allen and C-USA performing certain sales functions with respect to bulk rolled paper (as opposed to finished paper products). Essentially, the distribution agreement required Allen to service his prior bulk roll Canefields customers as Advantus had no prior relationship with Allen's bulk roll customers and had no experience in that side of the industry. Advantus, on the other hand, originally intended to focus on developing sales of converted (i.e. finished) alternative fiber paper products into distributor, retailer, and catalogue sale channels in which sale channels Advantus already had a continent-wide presence and established relationships. As a material inducement for Advantus' entry into the distribution agreement, Allen agreed that he would not directly or indirectly sell any alternative fiber (i.e. non-wood pulp based) paper products, whether bulk or finished, in North America in competition with Advantus, and further agreed that he would not directly or indirectly sell Canefields sugarcane fiber paper, except through Advantus for the duration of the contract term. A duplicate of this exclusive distribution agreement is attached at **Exhibit A** (the "Advantus Exclusive Contract").

3.      Defendant Herring knew of the exclusive terms of the Advantus Exclusive Contract having previously provided consulting services to C-USA and then, after the execution of the Advantus Exclusive Contract, to Advantus in connection with the importation and sale of alternative fiber paper products.

4.      Herring holds himself out to the public as being the sole principal of BFSI, and as such his knowledge is imputed to BFSI. Moreover, it appears that Allen has an economic interest in BFSI.

5.      At the time Advantus was paying Herring (through his wife's company, Mary Herring & Associates) to provide consulting services to Advantus (and while Allen was simultaneously providing services to Advantus pursuant to the Advantus Exclusive Contract), Herring and Allen formed BFSI to compete with Advantus.  Thereafter, Herring acted in concert with Allen through BFSI to secretly compete with Advantus in North America by directly distributing alternate fiber paper products, including, but not limited to, sugarcane fiber products from the same factory in India that supplied Advantus, and by selling bulk rolled sugarcane fiber paper through some converters (i.e. those who convert the bulk paper into finished paper products such as envelopes and copy paper) to whom Allen and C-USA were selling product prior to Allen and C-USA selling Advantus the exclusive distribution rights for the Canefields products in North America.

### Jurisdiction and Venue

6.      This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the partners and the damages (and alternatively the equitable relief sought) exceed the value of $75,000, exclusive of interest and costs.

7.      Plaintiff, Advantus, is a citizen of the State of Florida as it is incorporated in Florida and its principal place of business is in Jacksonville, Florida.

8.      Defendant, Allen, an individual, is a citizen of the State of New York. Defendant, Herring, an individual, is a citizen of the State of California.  Defendant,

BFSI, is a citizen of the State of California, as it is incorporated in California and its principal place of business is in Seal Beach, California.

9.      Non-party C-USA is a distributor of alternative fiber paper products for which Allen acts as CEO and was at all times material, its sole member.  Allen and C-USA are collectively referred to in the Advantus Exclusive Contract as the "C-USA Parties."

10.     Through Defendants' misconduct to date, Advantus has lost lucrative business in excess of $75,000 and seeks damages in excess of this amount from Defendants, BFSI and Herring.  Due to Defendants' ongoing violations of the exclusivity provision of the Advantus Exclusive Contract, Advantus' total damages will be difficult to ascertain and Advantus will have no adequate remedy at law.  Thus, Advantus also seeks injunctive relief as to Allen.

11.     Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the middle district of Florida.  The Advantus Exclusive Contract was negotiated and consummated between Allen and Advantus in Duval County, Florida.  Advantus' headquarters are in Duval County, Florida and Advantus is damaged here.  The Advantus Exclusive Contract incorporates Florida law as the governing law for its construction, validity, and interpretation, and provides for Duval County, Florida as the exclusive venue for the resolution of the parties' disputes.  In addition, products subject to the Advantus Exclusive Contract were intended to be, and were in fact, distributed in part within the State of Florida and the Advantus Exclusive Contract required Advantus to store significant amounts of the Canefields products at Advantus' warehouse in Duval County,

Florida. Advantus and Allen also contemplated that significant portion of the Advantus Exclusive Contract be performed, in substantial part, in the State of Florida. Defendants further committed tortious activity, the harm from which they knew would occur in Duval County, Florida.

12.     Defendants are subject to personal jurisdiction in the State of Florida because they have engaged in substantial and not isolated business activities within this state. Further, Defendants have worked in concert to breach or interfere with a contract in the State of Florida, and have knowingly committed a tort within the state. §48.193, Fla. Stat.

## Facts

### Advantus Acquires Exclusive Distribution Rights

13.     Prior to April 2012, C-USA and Allen held the exclusive distribution rights for Canefields products in North America. Because bulk rolled paper is made to order, there is no need to carry inventory or invest significant capital as a distributor, and Allen ran C-USA out of his personal residence at the time. Other than occasionally making made-to-order rolled bulk paper sales (which require no inventory and therefore no capital investment), C-USA had no meaningful operations, sales or logistical ability to bring Canefields products to market. Advantus, in turn, is well established as a seller, manufacturer and distributor of, inter alia, office products throughout North America. Advantus therefore had the resources, sales force and warehouses to bring the finished Canefields paper products to the North American market.

14.     In the Advantus Exclusive Contract, the exclusivity went in both directions.  That is, Allen and C-USA conferred to Advantus the exclusive rights to distribute Canefields products in North America, but also further restricted Advantus from selling any alternative fiber products except the Canefields products.  Allen and C-USA also in turn agreed to refrain from competing with Advantus on the sales of alternative fiber paper.  The exclusivity provisions state, in pertinent part:

> 1. <u>Appointment</u>.  C-USA Parties [defined within the contract as C-USA and Allen] hereby appoint Advantus as the sole and exclusive distributor for all products that are subject to the Master Distributor Agreement (the "Canefields Products") for North America (the "Territory") and will cooperate with Advantus regarding that appointment.

***

> 9. <u>Special Provisions</u>.
>
> (a) *Exclusivity*.  Advantus agrees it will not sell any other "alternate fiber products" sourced from anyone, other than C-USA Parties.  C-USA Parties agree that they will not sell Canefields Products or any other "alternate fiber products" to anyone other than Advantus, without advance written permission from Advantus (other than Advantus consenting to the sale by the C-USA Parties of the existing inventory as set forth in Paragraph 8(a) above).

15.     The exclusivity provision was a material provision of the Advantus Exclusive Contract and Advantus would not have entered any agreement to merely obtain a non-exclusive distributorship which Allen and C-USA could simply bypass by selling these same products directly to Advantus' North American customers and prospective customers in competition with Advantus after Advantus made the substantial investment to bring these products to market.

16.     Advantus has a legitimate protectable business interest in developing and maintaining substantial relationships with specific prospective or existing customers, maintaining customer goodwill associated with Advantus' ongoing sales of its paper products, obtaining a means to derive the economic benefit to recoup the substantial investment it was making in bringing the Canefields products to market, and protecting itself from unfair competition from the prior exclusive distributor of these products once Advantus made the necessary investment to bring these products to market.   The exclusivity provision is reasonably necessary to protect those legitimate business interests.   More importantly, Allen and C-USA benefited materially from the sale of the exclusive distribution rights to Advantus both in the form of up front consideration, and in gaining access to Advantus' continent-wide relationships with retailers, distributors and cataloguers who purchase converted paper products and thereby Advantus' ability to open the markets in a manner that neither Allen nor C-USA could have hoped to achieve without Advantus.

## The Defendants Breach Advantus' Exclusivity

17.     Shortly after Allen entered into the Advantus Exclusive Contract, Allen, Herring, and BFSI made efforts to continue to both sell sugarcane fiber paper from the same factories who sell Canefields brand paper and other alternative fiber products in North America.   Because the Advantus Exclusive Contract precluded Allen from engaging in such sales, he and Herring went through great lengths to conceal their activity, to include doing so through BFSI, a company ostensibly run by Herring, but in which it appears that Allen had some economic interest.

18. During this time, the Advantus Exclusive Contract required Allen to continue to make bulk rolled Canefields paper sales on behalf of Advantus to certain converters who turned the bulk rolls into finished paper products, such as envelopes, folders, copy paper, and the like and to otherwise service that business. In turn, Advantus would pay a commission to Allen's company, C-USA, for his efforts in supporting these sales. Until the summer of 2012, he appeared to comply.

19. However, in the summer of 2012, Advantus and Allen got into a dispute (discussed more particularly below) in which Allen refused to perform his contractual services under the Advantus Exclusive Contract.

20. It now appears that coinciding with Allen's refusal to perform services under the Advantus Exclusive Contract, Allen, in concert with Herring and BFSI (formed in August 2012), went to Michael's Office Solutions, Inc. ("Michael's") and Shelby Distributions, Inc. ("Shelby"), distributors of converted paper products primarily to governmental entities, and induced these entities to agree to buy bulk rolls of sugarcane fiber paper manufactured in India, ship them to domestic converters in the name of BFSI, with Michael's and Shelby paying the converters a fee to convert the paper into finished alternative fiber paper products. Michael's and Shelby would then sell the converted sugarcane fiber paper products to government entities and pay a fee to BFSI for putting the deal together.

21. At the time Advantus entered into the Advantus Exclusive Contract, Herring was providing consulting services to C-USA in connection with the importation and sale of alternative fiber paper products, and Advantus thereafter continued to utilize

8

the services of Herring.  The specific area of expertise that Herring purported to have was contracting and dealing with "converters,"--companies that take industrial size rolls of paper and convert them into copy paper, folders, envelopes and other similar office paper products for sales to distributors, retailers, etc.

22.    In an effort to conceal their breaches of the Advantus Exclusive Contract, Allen and Herring instructed Michael's and Shelby not to mention Allen's involvement in the project to third parties, and not to refer to the sugarcane fiber paper from India as "Canefields" products.  Allen and Herring made these requests of Michael's and Shelby without any explanation as to why the need for secrecy existed.  Through these schemes, the Defendants were therefore able to sell Canefields paper products into the North American market without ostensibly having that name on it, and avoiding such sales going through Advantus, as Allen was otherwise contractually obligated to do.

23.    Advantus only learned of the nature of this diversion and fraud when Michael's and BFSI got into a legal dispute in the public record resulting in litigation in California in that certain action styled as *Bio Fiber Solutions International v. Michael's Office Solutions, Inc., et al.*, Case No. 30-2013-00662306, Superior Court for the State of California in and for the County of Orange – Central Judicial District.  A duplicate of the Michael's Cross Complaint and its exhibits is attached as **Exhibit B**.  As can be seen from the Cross Complaint, Allen and Herring were centrally involved in attempting to sell Canefields products to Michael's at a time when Allen was under a contractual obligation to sell Canefields through no one save Advantus and was not allowed to sell any other alternative fiber products in North America.

24.    When Advantus discovered Defendants' misconduct and resulting violations of the Advantus Exclusive Contract, it notified them in writing and demanded that they cease and desist.  Copies of Advantus' cease and desist letters are attached as **Composite Exhibit C**.  Nonetheless, to date, Defendants have refused to cease their misconduct, requiring Advantus to bring this suit.

### Prior Advantus Dispute with Allen

25.    This is not Advantus' first dispute with Allen under the Advantus Exclusive Contract.  In the summer of 2012, Allen refused to continue to perform any services under the Advantus Exclusive Contract.  This resulted in arbitration between Advantus, Allen, and C-USA.  Allen filed bankruptcy shortly before the final hearing and the arbitration proceeded to final hearing with just Advantus and C-USA.  The arbitrator took testimony and entered a detailed arbitration award which the Florida Circuit Court in and for the Fourth Judicial Circuit confirmed.  The Circuit Court then entered final judgment finding that C-USA owed Advantus $57,235.42, and further declaring that due to C-USA's breaches of the Advantus Exclusive Contract, Advantus' ongoing royalty obligations had been discharged.  Duplicates of the Order Confirming the Final Arbitration Award, the Final Arbitration Award, and the Final Judgment are attached as **Exhibit D**.

26.    Advantus has hired the undersigned law firm and is obligated to pay a reasonable fee for its services.  Provision 10(f) of the Advantus Exclusive Contract provides that the successful or prevailing party in this litigation shall be entitled to recover reasonable attorneys' fees in addition to any other relief which may be granted.

27.     The Advantus Exclusive Contract has an initial 3-year term with certain renewals.  There are no post-term restrictive covenants.  Under applicable Florida law, Allen's violation of the exclusivity provision equitably tolls and extends the term of the Advantus Exclusive Contract, beginning upon the entry of an injunction in this case, so that Advantus obtains the full benefit of its agreement with Allen.

28.     All conditions precedent have been met, have occurred, or have been waived.

**Count I**
**(Breach of Contract – Injunctive Relief)**

29.     Advantus incorporates the allegations of paragraphs 1-28 above.

30.     Advantus seeks injunctive relief against Allen for breach of the Advantus Exclusive Contract.

31.     Allen has violated the Advantus Exclusive Contract by selling Canefields and other alternate fiber products in the North American market, including but not limited to, directly or indirectly soliciting Advantus' prospective and existing customers.

32.     Total damages from Advantus' loss of exclusivity are inherently difficult to capture, and therefore Advantus lacks an adequate remedy at law for the ongoing breach.

33.     The violation of a restrictive covenant may be remedied equitably through the entry of an injunction.

34.     Advantus is entitled to and seeks a permanent injunction prohibiting Allen from continuing to violate the exclusivity provision in the Advantus Exclusive Contract, which exclusivity provision is to last the duration of the Advantus Exclusive Contract.

The duration of the injunction must be tolled during the period of Allen's violation, such that it extends the term of the exclusivity of Advantus Exclusive Contract to begin upon entry of a judgment of permanent injunction.

35.    Allen's prior bankruptcy filing is irrelevant to this action for injunctive relief as Advantus does not seek monetary damages from Allen, the injunction would only require Allen to refrain from engaging in certain future conduct, and the pertinent authorities find that a right to injunctive relief preventing future violations of a covenant not to compete is not a claim under the Bankruptcy Code subject either to discharge or the discharge injunction.

WHEREFORE, Advantus, Corp. demands judgment against Jeff Allen for permanent injunctive relief to enjoin him, by himself or through others, from directly or indirectly violating the exclusivity provision of the Advantus Exclusive Contract and requests the equitable tolling of the term of the injunction for such period of time that Allen has been in violation of the covenant, to include extending it beyond the term of the Advantus Exclusive Contract, if necessary, for Advantus to receive the benefit of its bargain.

### Count II
### (Tortious Interference with Contract)

36.    Advantus incorporates the allegations of paragraphs 1-28 above.

37.    Advantus sues Herring and BFSI for tortious interference with contractual relations.

38.    Herring and BFSI had actual knowledge of the Advantus Exclusive Contract between Advantus and Allen.

39.     Despite this knowledge, Herring and BFSI intentionally assisted, induced, and caused Allen to breach the Advantus Exclusive Contract, knowing and intending to interfere with the agreement or knowing interference was substantially certain to occur as a result of their conduct.

40.     Herring and BFSI's conduct in this regard was unjustified.

41.     Advantus has been damaged by virtue of Herring and BFSI's tortious interference and indeed has lost sales to existing customers that it would have otherwise made.

42.     Herring and BFSI's conduct was intentional and with reckless disregard for Advantus' rights, and as such Advantus is entitled to an award of punitive damages.

WHEREFORE, Advantus, Corp. demands judgment against Bert Herring and Bio Fiber Solutions International, Inc., jointly and severally, for compensatory and punitive damages for tortious interference with contractual relations, together with interest, costs, and such other relief as the Court deems just and appropriate.

## Count III
### (Tortious Interference with Advantageous Business Relationships)

43.     Advantus incorporates the allegations of paragraphs 1-28 above.

44.     Advantus sues Herring and BFSI for tortious interference with an advantageous business relationship.

45.     Herring and BFSI have intentionally interfered with and continue to interfere with Advantus' business relationships with certain of its North American customers and prospective customers and have caused them not to obtain alternate fiber products from Advantus but rather to obtain these products from BFSI.

46.     The interference by Herring and BFSI with Advantus' advantageous business relationships was intentional, improper and unjustified, as they jointly solicited such business with, on behalf of, and in favor of Allen, whom Herring and BFSI knew was prohibited from selling alternate fiber products in North America due to the terms of the Advantus Exclusive Contract between Allen and Advantus.

47.     Advantus has been damaged and will continue to suffer damage due to these Defendants' interference, as Herring and BFSI used Allen's personal relationships with certain Advantus customers to divert business to BFSI.

48.     Herring and BFSI's conduct was intentional and with reckless disregard for Advantus' rights, and as such Advantus is entitled to an award of punitive damages.

WHEREFORE, Advantus, Corp. demands judgment against Bert Herring and Bio Fiber Solutions International, Inc., jointly and severally, for compensatory and punitive damages for tortious interference with advantageous business relationships, together with interest, costs, and such other relief as the Court deems just and appropriate.

## Count IV
### (Civil Conspiracy)

49.     Advantus incorporates the allegations of paragraphs 1-28 above.

50.     Advantus sues Herring for civil conspiracy.

51.     Herring, based upon agreements and understandings by and among them, conspired with Allen to commit and has, in fact, committed the unlawful acts described in Counts I, II, and III in furtherance of the conspiracy.

52.     Herring and Allen formed BFSI as an act in furtherance of the conspiracy to conceal their unlawful acts described herein.

53.    Herring knew of the civil torts he was committing and conspired with Allen in an attempt to cover up those wrongs and conceal his efforts.

54.    Advantus has been damaged by virtue of this conspiracy and will continue to suffer damage due to Herring's misconduct and therefore seeks damages from Herring.

55.    Herring's conduct was intentional and with reckless disregard for Advantus' rights, and as such Advantus is entitled to an award of punitive damages.

WHEREFORE, Advantus, Corp. demands judgment against Bert Herring for compensatory and punitive damages for civil conspiracy to breach and tortiously interfere with the Advantus Exclusive Contract and tortiously interfere with Advantus' advantageous business relationships.  Advantus further seeks interest, costs, pre and post-judgment interest, and such other relief as the Court deems just and appropriate.

DATED this ___ day of November, 2013.

ADAMS AND REESE, LLP

By:_____
Alan S. Wachs, Esq.
alan.wachs@arlaw.com
Florida Bar No.: 980160
Chris T. Harris, Esq.
chris.harris@arlaw.com
Florida Bar No.: 107115
Matthew P. McLauchlin, Esq.
matt.mclauchlin@arlaw.com
Florida Bar No.: 484180
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
(904) 355-1700 (Telephone)
(904) 355-1797 (Facsimile)

Attorneys for Advantus Corp.