IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADVANTUS, CORP.,
a Florida Corporation.

                    Plaintiff,

        -against-

JEFF ALLEN, an individual,
BERT HERRING, an individual, and
BIO FIBER SOLUTIONS INTERNATIONAL, INC.,
a California corporation,

                  Defendants.

JEFF ALLEN,

                  Third Party Plaintiff,

        -against-

KEVIN CARPENTER and HARRY CHERNEK,

                  Third Party Defendants.

Civil Action No.:
3:13-cv-1430-J-32PDB

## DEFENDANT JEFF ALLEN'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT

Defendant, Jeff Allen ("Allen"), by and through his attorneys, Cooper Erving & Savage LLP and Henrichsen Siegel, P.L.L.C., for his Answer, Affirmative Defenses and Counterclaims to Plaintiff's Complaint herein and Third-Party Complaint against Third Party Defendants, states as follows:

1.  Denies the allegations set forth in paragraph "1" of the Complaint, except admits that Plaintiff purports to claim entitlement to injunctive relief and damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

### Nature of the Case

2.   With respect to the allegations asserted in paragraph "2" of the Complaint, admits that Canefields paper products are manufactured in India, denies all other facts asserted, inferred or implied therein and refers the Court to the distribution agreement for its contents.

3.   Denies the allegations asserted in paragraph "3" of the Complaint.

4.   Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations asserted in paragraph "4" of the Complaint.

5.   Denies the allegations asserted in paragraph "5" of the Complaint.

### Jurisdiction and Venue

6.   Defendant, Jeff Allen, denies the allegations set forth in paragraph "6" of the Complaint, except admits that Plaintiff purports to invoke this Court's jurisdiction pursuant to 28 U.S.C. 1332 by reason of diversity of citizenship of the parties and the amount in controversy exceeding the sum of $75,000.00 exclusive of interest and costs.

7.   Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations asserted in paragraph "7" of the Complaint.

8.   With respect to the allegations asserted in paragraph "8" of the Complaint, admits that defendant Allen is a citizen of the State of New York, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted therein.

9.   Denies the allegations asserted in paragraph "9" of the Complaint.

10. Denies the allegations asserted in paragraph "10" of the Complaint.

11. Denies the allegations set forth in paragraph "11" of the Complaint, except admits that Plaintiff purports that venue is proper pursuant to 28 U.S.C. 1391.

12. Denies the allegations asserted in paragraph "12" of the Complaint.

### Facts

13. Denies the allegations asserted in paragraph "13" of the Complaint.

14. Denies the allegations asserted in paragraph "14" of the Complaint and refers the Court to the distribution agreement for its contents.

15. Denies the allegations asserted in paragraph "15" of the Complaint.

16. Denies the allegations asserted in paragraph "16" of the Complaint.

17. Denies the allegations asserted in paragraph "17" of the Complaint.

18. Denies the allegations asserted in paragraph "18" of the Complaint and refers the Court to the distribution agreement for its contents.

19. Denies the allegations asserted in paragraph "19" of the Complaint.

20. Denies the allegations asserted in paragraph "20" of the Complaint.

21. Denies the allegations asserted in paragraph "21" of the Complaint.

22. Denies the allegations asserted in paragraph "22" of the Complaint.

23. Denies the allegations asserted in paragraph "23" of the Complaint.

24. With respect to the allegations asserted in paragraph "24" of the Complaint, Defendant Allen admits receiving the letter dated July 31, 2013 signed by Alan S. Wachs, but denies all allegations, statements, and inferences contained therein.  Allen denies all remaining allegations asserted in paragraph "24" of the Complaint.

25. With respect to the allegations asserted in paragraph "25" of the Complaint, denies that Allen was a party to and that the Court had jurisdiction over Allen in connection with the action filed by Advantus in the Florida Circuit Court for the Fourth Judicial Circuit.  Allen

further denies the validity of any judgment obtained against Allen in Florida, and refers the Court to documents attached to the Complaint as Exhibit D for their contents.

26.  Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted in paragraph "26" of the Complaint and refers the Court to Exhibit A of the Complaint for its content.

27. Denies the allegations asserted in paragraph "27" of the Complaint.

28. Denies the allegations asserted in paragraph "28" of the Complaint.

## Count I
### (Breach of Contract – Injunctive Relief)

29. Defendant Allen repeats and re-alleges his responses to paragraphs 1 through 28 of the Complaint as though fully set forth herein in response to paragraph "29" of the Complaint.

30. Denies the allegations asserted in paragraph "30" of the Complaint.

31. Denies the allegations asserted in paragraph "31" of the Complaint.

32. Neither admits nor denies the legal statement set forth in paragraph "32" of the Complaint, and to the extent that the allegations set forth in paragraph "32" of the Complaint constitute a conclusion of law, such allegations are referred to the Court.

33. Neither admits nor denies the legal statement set forth in paragraph "33" of the Complaint, and to the extent that the allegations set forth in paragraph "33" of the Complaint constitute a conclusion of law, such allegations are referred to the Court.

34. Neither admits nor denies the legal statement set forth in paragraph "34" of the Complaint, and to the extent that the allegations set forth in paragraph "34" of the Complaint constitute a conclusion of law, such allegations are referred to the Court.  To the extent factual allegations are asserted in paragraph "34" of the Complaint, such factual assertions are denied.

35. Neither admits nor denies the legal statement set forth in paragraph "35" of the Complaint, and to the extent that the allegations set forth in paragraph "35" of the Complaint constitute a conclusion of law, such allegations are referred to the Court.

Denies all allegations, claims, statements, prayers for relief, and inferences contained in the "WHEREFORE" paragraph as and for Count I of the Complaint herein.

### Count II
### (Tortious Interference with Contract)

36. Defendant Allen repeats and re-alleges each and every response set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

37. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "37" of the Complaint, such factual assertions are denied.  Defendant Allen admits that Plaintiff purports to sue Herring and BFSI for tortious interference with contractual relations.

38. Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted in paragraph "38" of the Complaint.

39. Denies the factual allegations asserted in paragraph "39" of the Complaint.

40. Neither admits nor denies the legal statement set forth in paragraph "40" of the Complaint, and to the extent that the allegations set forth in paragraph "40" of the Complaint constitute a conclusion of law, such allegations are referred to the Court.

41. Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted in paragraph "41" of the Complaint.

42. Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted in paragraph "42" of the Complaint.

Denies all allegations, claims, statements, prayers for relief, and inferences contained in the "WHEREFORE" paragraph as and for Count II of the Complaint herein.

## Count III
### (Tortious Interference with Advantageous Business Relationships)

43. Defendant Allen repeats and re-alleges each and every response set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

44. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "44" of the Complaint, such factual assertions are denied. Defendant Allen admits that Plaintiff purports to sue Herring and BFSI for tortious interference with an advantageous business relationship.

45. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, statements, and inferences asserted in paragraph "45" of the Complaint.

46. Denies the allegations, statements, and inferences asserted in paragraph "46" of the Complaint.

47. Denies the allegations, statements, and inferences asserted in paragraph "47" of the Complaint.

48. Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations asserted in paragraph "48" of the Complaint.

Denies all allegations, claims, statements, prayers for relief, and inferences contained in the "WHEREFORE" paragraph as and for Count III of the Complaint herein.

## Count IV
### (Civil Conspiracy)

49. Defendant Allen repeats and re-alleges each and every response set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

50. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "50" of the Complaint, such factual assertions are denied. Defendant Allen admits that Plaintiff purports to sue Herring and BFSI for civil conspiracy.

51. Denies the allegations, statements, and inferences asserted in paragraph "51" of the Complaint.

52. Denies the allegations, statements, and inferences asserted in paragraph "52" of the Complaint.

53. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "53" of the Complaint, such factual assertions are denied.

54. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "54" of the Complaint, such factual assertions are denied.

55. To the extent that defendant Allen is required to respond to the allegations asserted in paragraph "55" of the Complaint, such factual assertions are denied.

Denies all allegations, claims, statements, prayers for relief, and inferences contained in the "WHEREFORE" paragraph as and for Count IV of the Complaint herein.

56. Deny each and every other allegation not heretofore admitted or denied.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because it fails to state a claim, in whole or in part, upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff has failed to perform pursuant to the contract upon which it sues.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff has no standing to assert a cause of action against defendant Jeff Allen.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate any damages it has claimed.

## SEVENTH AFFIRMATIVE DEFENSE

That the damages, if any, alleged in the Complaint were, in whole or in part, the result of the Plaintiff's breach of its agreement with defendant Allen.

## EIGHTH AFFIRMATIVE DEFENSE

Any damages, if any, suffered by the Plaintiff are not the result of any actions of the defendant Allen.

## NINTH AFFIRMATIVE DEFENSE

The distribution agreement the Plaintiff alleges was breached by Defendant Allen is null and void based on the lack of meeting of the minds and mutual mistake.

## TENTH AFFIRMATIVE DEFENSE

The distribution agreement the Plaintiff alleges was breached by Defendant Allen is null and void based on the lack of consideration.

## ELEVENTH AFFIRMATIVE DEFENSE

The non-compete agreement the Plaintiff alleges was breached by Defendant Allen is void and unenforceable as a matter of law because Plaintiff cannot show that the non-compete agreement is reasonably necessary to protect any legitimate business interest of the Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

The non-compete agreement the Plaintiff seeks to enforce is unenforceable as it is perpetual in nature and unlimited geographically.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for attorney's fees and injunctive relieve against Allen are unenforceable by operation of the automatic stay and permanent injunction under 11 U.S.C. §362 of the Bankruptcy Code.

## COUNTERCLAIMS AGAINST ADVANTUS CORP. AND THIRD-PARTY CLAIMS AGAINST KEVIN CARPENTER AND HARRY CHERNEK

Defendant and Counterclaimant, Jeff Allen, (hereinafter "Allen") by and through the undersigned counsel, does hereby allege as follows:

### Jurisdiction and Parties

1.   This is an action for damages in excess of $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. §1332.

2.   Jeff Allen is a resident of Newport, New York.

3.   Plaintiff Advantus Corporation ("Advantus") is a citizen of the State of Florida as it is incorporated in Florida and its principal place of business is in Jacksonville, Florida.

4.   Upon information and belief, Third-Party Defendant Kevin Carpenter ("Carpenter") is a citizen of the State of Florida and, at all times relevant herein, is/was the president of Advantus.

5.   Upon information and belief, Third-Party Defendant Harry Chernek ("Chernek") is a citizen of the State of Florida and, at all times relevant herein, is/was the Executive Vice President of Sales of Advantus.

6.   Through Advantus, Carpenter and Chernek's misconduct to date, Allen has lost his business and lucrative business opportunities in excess of $75,000.00 and seeks damages in excess of this amount from Counterclaim Defendant and Third-Party Claim Defendants.

### Factual Allegations

7.   Allen was the founder and President of Canefields, USA, LLC ("Canefields") from October 2009 until January 2012.  On December 1, 2009, Allen was appointed the sole distributor of Canefields branded products in North America.  A copy of Allen's appointment agreement is attached hereto and made part hereof as **Exhibit 1.**

8.   In or about September 2011, Allen contacted Harry Chernek ("Chernek"), Advantus' Executive Vice President of Sales, to discuss the potential of a joint venture, merger, partnership or collaboration between Canefields U.S.A. and Advantus.

9.   On or about November 1, 2011, Allen met with Advantus' representatives in Jacksonville, Florida.  During said meeting, Allen presented Advantus with a draft term sheet to begin negotiations for a possible joint venture.

10. On or about December 22, 2011, Allen representing Canefields USA, and Harry Chernek representing Advantus, entered into a letter of intent ("LOI") which was to serve as a basis for developing a formal contract.  A copy of the Letter of Intent is attached hereto and made part hereof as **Exhibit 2.**

11. Pursuant to the LOI, Advantus agreed that it would only sell alternative fiber products that were sourced from Canefields and Canefields agreed that it would only sell such products to Advantus.  Advantus also agreed to provide operational functions and use reasonable efforts to sell Canefields products to existing Advantus accounts.  Advantus warranted it would use reasonable efforts to sell the Canefields products to these vendors:  United Stationer Supply

Company, SP Richards, IS Group, Trimega, Office Partners, Wal-Mart, Target, Costco, Staples, Office Depot, Office Man, WB Mason, Michaels, Hobby Lobby, and Walgreens. See Exhibit 2.

12. The parties agreed to execute a formal contract no later than January 31, 2012. The parties did not execute a formal contract before January 31, 2012.

13. Following the execution of the LOI, Allen began negotiating a distribution agreement with Advantus. On or about April 2, 2012, Advantus drafted a Distribution Agreement ("Draft Agreement"), which appointed Advantus as the sole and exclusive distributor of Canefields products in North America and, in exchange, Advantus agreed, among other things, to pay Allen the amount of $15,000 as a flat consultation fee, to pay Canefields USA Fifty Percent (50%) of the "net profits" arising from the Canefields products distribution on a monthly basis and $2,500 monthly distribution fee advance for the first six (6) months of the Agreement.

14. Advantus took over operations despite the fact that Canefields and Advantus were ultimately unable to reach an agreement.

15. On or about April 19, 2012, Allen signed the Draft Agreement and asked for Advantus to return an executed copy of the agreement. See E-mail dated April 19, 2012 attached hereto and made part hereof as **Exhibit 3.**

16. On or about April 20, 2012, Kevin Carpenter, President of Advantus, modified the Draft Agreement ("Modified Agreement") and asked Allen and Morgan Raj, president of Canefields Australia, to re-sign the Modified Agreement. See E-mail dated April 20, 2012 attached hereto and made part hereof as **Exhibit 4.**

17. Allen did not sign the Modified Agreement.

18. On or about April 27, 2012, Allen informed Chernek that there were various contingencies that needed to be addressed before he could sign the Modified Agreement.  See E-mail dated April 27, 2012 attached hereto and made part hereof as **Exhibit 5.**

19. The parties continued to negotiate the terms of the Modified Agreement up until June 14th, 2012.

20. As of June 14th, 2012, Advantus had not paid Allen and Canefields USA any of the fees agreed upon under Section 4 of the Draft Agreement.

21. On June 14th, 2012, Allen sent Harry Chernek a formal notice terminating Canefields' association with Advantus effective immediately. A copy of the Termination Notice is attached hereto as **Exhibit 6.**

22. On June 15, 2012, after receiving Allen's notice terminating his and Canefields USA's association with Advantus, Advantus instructed Canefields Australia to cancel all open product orders for Canefields paper products previously issued by Advantus to the manufacturer in India.

23. On or about June 18, 2012, and upon information and belief, Advantus contacted Morgan Raj, president of Canefields Australia, and sought to obtain his commitment that Canefields Australia would continue to supply products to Advantus.

24. Advantus, Chernek, and Carpenter sought to obtain Canefields Australia commitment under the false pretenses that Allen and Canefields USA had signed an agreement with Advantus giving Advantus sole and exclusive distribution rights over Canefields products in North America.

25. On or about June 21, 2012, Advantus sent payments to Allen in response to Allen's June 14th, 2012 notice terminating his and Canefields USA's association with Advantus.  This

payment was the first and only time Allen received any compensation from Advantus since the parties began negotiating a formal agreement in or about November 2011.

26. As of August 17, 2012, Allen and Canefields USA had not received any compensation for profit-splits on the sales of Canefields branded products Advantus was making.

27. On or about August 22, 2012, under false pretenses that an exclusivity agreement between Allen, Canefields USA and Advantus existed, Advantus contacted Quality Park and demanded that Quality Park stop doing business with Allen and Canefields USA.

28. Upon information and belief, as of August 31, 2012, Advantus had made approximately $695,000 worth of sales.  Advantus failed to pay Allen and/or Canefields U.S.A. for the profit-splits arising from the sales of Canefields branded products.

29. On or about September 11, 2013, Michael's Office Solutions, Inc. ("Michaels"), filed a Third Party Complaint against Allen and Canefields USA in the Superior Court for the State of California, Orange County, Central Judicial District – Case No. 30-2013-00662306-CU-BC-CJC (the "Michael's action").  The Michael's action sought damages against the Allen and Canefields USA for (i) intentional misrepresentation, (ii) negligent misrepresentation and (iii) an account of money had and received.

30. On or about September 24, 2013, Shelby Distributions Inc. ("Shelby"), filed a ThirdParty Claim against the Allen and Canefields USA in the Superior Court for the State of California, Orange County, Central Judicial District – Case No.30-2013-00662274-CU-BC-CJC) (the "Shelby action"). The Shelby action sought damages against Allen and Canefields USA for (i) intentional misrepresentation, (ii) negligent misrepresentation and (iii) an account of money had and received.

31. Upon information and belief, Michael's is a subsidiary of Shelby.

32. The allegations made against Allen and Canefields USA in the Michael's and Shelby's actions (collectively the "California actions") arise from conduct that allegedly violated Allen's and Canefields USA's duties and responsibilities under the Draft Agreement with Advantus.

33. Upon information and belief, the California actions were filed against Allen and Canefields USA at the request of, participation, and/or collaboration of Advantus and with the sole purpose of oppressing Allen and Canefields USA with litigation throughout the country.

34. On January 24, 2013, Allen filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of New York. On April 30, 2013, Allen was granted discharge under Section 727 of Title 11 of the United States Code (the Bankruptcy Code).

35. Under false pretenses that the Draft Agreement was in effect requiring Allen and Canefields USA to arbitrate their disputes with Advantus, Advantus invoked the arbitration and dispute resolution provision in the Draft Agreement to force Allen and Canefields USA into Arbitration.

36. Allen objected to the Arbitration process on various grounds, including Advantus' refusal to grant him sufficient time to retain counsel in Jacksonville, Florida to represent him and Canefields USA.

37. Despite Allen's and Canefields USA repeated objections to the Arbitration process, a hearing was held on February 12, 2013 in Duval County, Florida before Bernard Nachman (the "Arbitrator").

38. Allen and/or Canefields USA did not appear or substantially participate in the arbitration hearing. At the conclusion of the hearing, the arbitrator entered an Award in favor of Advantus awarding Advantus costs and attorney's fees. The Award recognized that the matter was stayed as to the debtor individually based on the debtor's filing of a Chapter 7 petition under the

Bankruptcy Code.  A copy of the Award of Arbitration is attached hereto and made part hereof as

**Exhibit 7.**

39. No award was ever issued against Allen in the arbitration.

40. On or about November 20th, 2013, Advantus filed the present action against Allen also alleging Allen's purported violation of an "Exclusive Contract" with Advantus.

41. Advantus' conduct caused Allen to lose his business (Canefields USA), customers and clients and forced Allen to defend legal actions in the States of Florida and California all based on claims arising out of Allen's alleged breach of a distribution agreement with Advantus.

## FIRST COUNTERCLAIM AGAINST ADVANTUS
### Unjust Enrichment

42. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

43. Unjust enrichment occurs when one party (here Advantus), has obtained money, property, or a benefit (here Canefields USA), from another party (Allen) as a result of the work or the efforts of the other party (Allen) under such circumstances that, in fairness and good conscience, the money, property, or benefit should not be retained.  In such circumstances, the law requires Advantus to compensate Allen for the fair value of the company known as Canefields USA.

44. In sum and substance, Advantus entered into contract negotiations with Allen to acquire Canefields USA; Allen provided Advantus with access to all of Canefields USA's business relationships; no contract was entered into between Advantus and Allen; Advantus nonetheless retained Canefields USA, but has not paid Allen fair value for Canefields USA.

45. By failing to pay Allen fair value for Canefields USA, Advantus enriched itself at the expense of Allen, who was left without financial resources and with no alternative but to declare bankruptcy.

46. Advantus continues to receive product from Canefields USA's sources, continues to receive a stream of revenue from Canefields USA's customers, and continues to use the name, goodwill, and expertise of Canefields USA, all of which Allen provided to Advantus, to compete in the bio-fibers industry where Canefields USA operated.

47. Advantus used its superior financial resources to deprive Allen of any practical opportunity to receive fair value for Canefields USA and further, through expensive litigation, endeavored to drive Allen out of the biofibers industry entirely, so that he could not use any of the goodwill or expertise he had developed in the course of building Canefields USA which became solely the property of Advantus, though without paying Allen fair compensation.

48. In equity and good conscience, it would not be appropriate for Advantus to retain Canefields USA without paying Allen fair value for the company.

49. Upon information and belief, the fair and reasonable value of Canefields USA is in excess of $1,000,000.00.

50. By reason of the foregoing, Advantus is indebted to Allen, based on unjust enrichment, for a sum in excess of $1,000,000, together with interest thereon from January 1, 2012, plus the costs and disbursements of this proceeding.

## SECOND COUNTERCLAIM AGAINST ADVANTUS AND
## FIRST THIRD-PARTY -CLAIM AGAINST CARPENTER AND CHERNEK
### Tortious Interference with Contract

51. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

52. Advantus, Chernek and Carpenter had actual knowledge that Allen and Canefields U.S.A. had an exclusive agreement with Canefields Australia to distribute Canefields paper products in the United States.

53. Before reaching a signed agreement with Canefields USA and Allen, and despite knowing of their exclusive agreement with Canefields Australia, Advantus, Chernek and Carpenter intentionally assisted, induced, and caused Canefields Australia to breach their exclusive agreement, knowing and intending to interfere with the agreement or knowing interference was substantially certain to occur as a result of their conduct, with the purpose of obtaining the benefits of such agreement for Advantus.

54. Allen has been damaged by virtue of Advantus', Chernek's and Carpenter's tortious interference.

55. As a result of Advantus', Chernek's and Carpenter's unlawful conduct, Allen has lost sales to existing and prospective customers that Allen would have otherwise made.

56. As a result of Advantus', Chernek's and Carpenter's unlawful conduct, Allen has lost his ownership and control over Canefields U.S.A.

57. Advantus', Chernek's and Carpenter's conduct were intentional and with reckless disregard for Allen's rights, and as such, Allen is entitled to an award of punitive damages.

58. Allen was injured physically, emotionally and financially as a result of these actions, in an amount to be determined at trial.

### THIRD COUNTERCLAIM AGAINST ADVANTUS AND
### THIRD-PARTY CLAIM AGAINST CARPENTER AND CHERNEK
### Tortious Interference with Advantageous Business Relationships

59. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

60. Advantus, Chernek and Carpenter have intentionally interfered with and continue to interfere with Allen's business relationships with certain of its North American customers and prospective customers and have caused them not to obtain Canefields products and/or alternate fiber products from Allen and/or Canefields U.S.A. but rather to obtain these products from Advantus.

61. Among the business relationships Advantus, Chernek and Carpenter have intentionally interfered with Allen's business relationships with Canefields Australia and Quality Park, a subsidiary of Cenveo, each of which were multimillion dollar-relationships Allen lost as a result of Advantus', Chernek's and Carpenter's conduct.

62. The interference by Advantus, Chernek and Carpenter with Allen's advantageous business relationships was intentional, improper and unjustified, as they jointly solicited such business with, on behalf of, and in favor of Advantus, under the false pretenses that Allen, Canefields U.S.A. and Advantus had a valid distribution agreement in place granting Advantus the exclusive rights to sell Canefields branded products in North America.

63. Such misrepresentation constituted wrongful means by which Advantus, Chernek, and Carpenter were able to deprive Allen of past and prospective customers.

64. Allen has been damaged and will continue to be damaged due to Advantus', Chernek's and Carpenter's interference with Allen's customers and diversion of business to Advantus based on false pretenses that a valid distribution agreement exists between Allen, Canefields U.S.A. and Advantus.

65. Advantus', Chernek's and Carpenter's conduct was intentional and with reckless disregard for Allen's rights, and as such, Allen is entitled to an award of punitive damages.

66. Allen was injured physically, emotionally and financially as a result of these actions, in an amount to be determined at trial.

## THIRD THRD-PARTY CLAIM AGAINST CARPENTER AND CHERNEK
### (Civil Conspiracy)

67. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

68. Allen sues Harry Chernek and Kevin Carpenter for civil conspiracy.

69. Chernek and Carpenter knew that no agreement existed between Jeff Allen, Canefields U.S.A. and Advantus granting Advantus the exclusive right to distribute Canefields branded products in North America.

70. With knowledge that such agreement did not exist, Chernek and Carpenter committed the unlawful acts described in the First, Second, and Third Counterclaims in furtherance of the conspiracy.

71. Upon information and belief, Chernek and Carpenter falsely represented to representatives of Canefields Australia and Quality Park, among others, that Advantus had the exclusive rights to sell Canefields branded products in the United States.

72. Upon information and belief, Chernek told Morgan Raj, representative of Canefields Australia, that Advantus would stop distributing Canefields branded products in the United States if Canefields Australia continued to do business with Allen and Canefields U.S.A.

73. Chernek knew of the civil torts he was committing and conspired with Raj and Carpenter in an attempt to cover up those wrongs and conceal his efforts.

74. Allen has been damaged by virtue of this conspiracy and will continue to suffer damage due to Chernek's and Carpenter's misconduct and therefore seeks damages from Chernek and Carpenter.

75. Chernek's conduct was intentional and with reckless disregard for Allen's rights, and as such, Allen is entitled to an award of punitive damages.

76. Allen was injured physically, emotionally and financially as a result of these actions, in an amount to be determined at trial.

## FOURTH COUNTERCLAIM AGAINST ADVANTUS
### Abuse of Process

77. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

78. Advantus intentionally used an arbitration proceeding, this action, and other actions in California in an improper manner and for an ulterior purpose, namely to seize Allen's company (Canefields USA), to drive him out of the alternative fiber paper products industry entirely, and to deprive Allen of his livelihood thus securing a competitive advantage for itself.

79. Advantus intended its actions to coerce Allen into acknowledging the existence of an invalid distribution agreement and to coerce Allen into giving up his rights to exclusively sell Canefields products in North America.

80. Allen was injured physically, emotionally and financially as a result of these actions, in an amount to be determined at trial.

## FIFTH COUNTERCLAIM AGAINST ADVANTUS
### Breach of Contract

81. Allen repeats and re-alleges each and every paragraph set forth in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

82. To the extent a distribution agreement existed between Allen, Canefields USA and Advantus, Advantus has breached said agreement as follows:

a. Failed to pay Allen and Canefields USA the consideration promised under the Agreement;

b. Withheld financial information, profits and all expensive reimbursement due to Canefields USA and Allen;

c. Failed to supply any financial data which was required to be disclosed prior to the Agreement;

d. Missed crucial closure timelines resulting in damages to Canefields USA and Allen;

e. Failed to execute a supply arrangement with Staples for Canefields USA's copy paper resulting in damages to Canefields USA and Allen;

f. Failed to supply major prospects with Canefields USA's paper for testing and trialing purposes resulting in damages to Canefields USA and Allen;

g. Declined to engage key customers resulting in loss of crucial accounts and prospects resulting in damages to Canefields USA and Allen;

h. Failed to promote Canefields product lines within key industry channels resulting in damages to Canefields USA and Allen;

i. Failed to develop pressure sensitive label products using Canefields USA's paper;

j. Declined to promote Canefields USA dated goods, a key product category, resulting in damages to Canefields USA and Allen;

k. Failed to provide Canefields USA and Allen with certain logistical capabilities required by the agreement to effectively distribute Canefields USA's copy paper and resorted instead to using Canefields USA's existing

logistical capabilities in material breach of the promises made to Canefields USA and Allen;

83. As a result of Advantus' breach, Allen has suffered damages to be determined at trial.

84. The contract permits Allen to recover attorney's fees if he is successful at trial.

**WHEREFORE**, Defendant Jeff Allen respectfully requests that the Complaint against him be dismissed with prejudice, along with costs, interest, attorneys' fees, and such other relief as the Court may deem appropriate. Defendant Allen further demands judgment against Advantus Corp., Harry Chernek and Kevin Carpenter as follows:

i. On the First Counterclaim for unjust enrichment, judgment against Advantus in an amount to be determined at trial believed to be in excess of $1,000,000.00 to compensate him for the fair value of Canefields USA.

ii. On the Second Counterclaim against Advantus and First Third-Party Claim against Carpenter and Chernek, judgment against Advantus, Kevin Carpenter and Harry Chernek jointly and severally, for compensatory and punitive damages for tortious interference with contractual relations.

iii. On the Third Counterclaim against Advantus and Second Third-Party Claim against Carpenter and Chernek, judgment against Advantus, Kevin Carpenter and Harry Chernek jointly and severally, for compensatory and punitive damages for tortious interference with business relationships.

iv. On the Third Third-Party Claim against Carpenter and Chernek, judgment against Harry Chernek and Kevin Carpenter, jointly and severally, for compensatory and punitive damages for civil conspiracy.

v.  On the Fourth Counterclaim against Advantus, judgment against Advantus for compensatory and punitive damages for abuse of process.

vi. On the Fifth Counterclaim against Advantus, judgment against Advantus in an amount to be determined at trial for breach of contract.

vii. For interest, costs, and attorneys' fees as same are legally recoverable according to the particular cause of action asserted in each counterclaim.

viii. For such other and further relief as the Court deems just and appropriate.

**COOPER ERVING & SAVAGE LLP**


By:   */s/ Carlo A. C. de Oliveira*
          Carlo A. C. de Oliveira, Esq. (Bar No.: 516271)
          CdeOliveira@coopererving.com
          Philip G. Steck, Esq. (Bar Roll No.: 102664)
          Psteck@coopererving.com
          Counsel for defendants Jeff Allen
          39 North Pearl Street, Fourth Floor
          Albany, New York 12207-2785
          (518) 449-3900

          *s/Neil L. Henrichsen*
          Neil L. Henrichsen (FL Reg. No. 0111503)
          nhenrichsen@hslawyers.com
          HenrichsenSiegel
          1648 Osceola Street
          Jacksonville FL  32204
          Tel: 904.381.8183
          Fax: 904.381.8191

EXHIBIT 1



PAPER FROM SUGAR CANE FIBRE

Date: 1st dec.09

Subject: Sole distributorship for North America
Issued To: Jeff Allen of 135 Summit Road Extension Newport, New York 13416 USA

<u>APPOINTMENT OF SOLE DISTRIBUTORSHIP AND SUPPLY FOR NORTH AMERICA</u>

In accordance with and governed by Canefields Eco Products Pty Ltd(Aust) and it's constitution, Canefields Eco Products Pty Ltd(Aust), hereby appoint Jeff Allen as sole distributor for North America with the following conditions:

- Jeff Allen is appointed as sole distributor for Canefields Branded products commencing 1st December 2009 in North America.

- Canefields eco products pty ltd , undertakes it will not appoint another distributor for North America without consultation and agreement from Jeff Allen.

- Canefields eco products pty ltd(Aust) has agreed for Jeff Allen to set up a business in the US utilizing the name Canefields USA

- Under the said appointment Canefields USA agrees and is required to pay a premium of 2.0% on top of TNPL quarterly factory quoted pricing to Canefields eco products pty ltd (Aust) for copy paper sold by Canefields USA into wholesale trade channels, commercial markets, and contract stationers.

- Under the said appointment Canefields USA agrees and is required to pay a premium of 5.0% on top of TNPL factory quoted pricing to Canefields eco products pty ltd (Aust) for copy paper sold by Canefields USA into end users, commercial printers, and copy centers.

- Under the said appointment Canefields USA agrees and is required to pay a premium of $0.015 per US pound ($30.00 per US ton) on top of TNPL factory quoted pricing to Canefields eco products pty ltd (Aust) for reels of print papers sold to Canefields USA by Canefields eco products pty ltd(Aust).

- It is understood and agreed by both parties that Canefields USA seeks to aggressively expand the Canefields branded product line to include a multitude of different products. The premium to be paid by Canefields USA to Canefields eco products pty ltd for new products will be negotiated and determined on a case by case basis. Said premiums will be defined by addendums to this agreement.

- Canefields USA agrees to provide full financial disclosure and reporting to Canefields eco products pty ltd by request so that sales channels constituting premiums paid can be determined independently.

- It is agreed by both parties that premiums will be calculated utilizing US Imperial figures.

PRINTED ON SUGARCANE PAPER

-2-

- Canefields USA would be required to place a minimum order of 44 US tons being two 20 footer containers to commence, it's stocking of copy papers to supply North America by 30th march 2010 failing to do so would render this appointment invalid, however a negotiated time frame arrangement or extension may be allowed.

- Canefields USA is required to pay a deposit of 30% of the quoted value of the written pro forma invoice from canefields eco products pty ltd, for the products ordered and remaining to be paid upon shipment.

- Canefields Eco Products pty ltd will provide a special consideration pricing called factory pricing with product costs, on a quarterly basis. Canefields USA is free to handle its own shipping arrangements and related costs.

- Canefields USA, undertakes to handle all expenses and necessary i.e. clearance, port charges, de-stuffing, palletising, warehousing, transportation, taxes, duty, etc, for the goods prior to supply to the respective customers in North America.

- Canefields USA expressly agrees to only purchase printing papers and similar paper products that are produced primarily from bagasse, agricultural residue, and / or fiber sources that are considered to be "alternative" in the North American marketplace exclusively from Canefields Eco Products pty ltd unless otherwise pre-negotiated. Canefields USA is free to purchase goods converted in the US from paper Canefields USA purchases from Canefields Eco Products pty ltd.

- Canefields Multipurpose copy paper, printing paper reels, converted products, and related paper products will be readily available with a quarterly advance notice by Canefields USA for purchase and pick up of containers in India, to service the needs of North America, with Canefields USA stocking adequate supply in North America to service such contracts.

- Canefields ,name or brand and related advertising or promo material always remains the property of Canefields eco products pty ltd (Aust) and is strictly forbidden for sale, and usage would only be permitted after consultation and agreeance by canefields eco products pty ltd.(Aust) in writing ,should this be breached this appointment will be deemed null and void.

- Jeff Allen is permitted to on sell the distributorship in whole or part or appoint other sub distributors in North America after consultation and agreement with Canefields eco products pty ltd (Aust).

Signed By: Mr. Morgan raj          Signature:

Title: CEO/Director, Canefields Eco Products Pty Ltd (Aust)

Signed By: Mr. Jeff Allen          Signature:

Title: President, Canefields USA, LLC

Date:1st December 2009

I, Jeff Allen of 135 Summit Road Extension Newport, New York 13416 USA , accept the above appointment and agree to the conditions laid out as above.

Note:This appointment will come into immediate effect with both parties signature on the document.

PRINTED ON SUGARCANE PAPER

EXHIBIT 2

# ADVANTUS

Advantus Corp
12276 San Jose Blvd.
Building 618
Jacksonville, FL 32223
Tel. 904.482.0091
Fax 904.482.0099
www.advantus.com

December 22, 2011

Jeff Allen
President/CEO
Canefields USA, LLC
Tel.: 315-292-1069
jeff@canefieldsusa.com

Dear Jeff:

This letter of intent is based on discussions between Advantus Corp. ("Advantus") and Canefields USA, LLC ("Canefields") regarding the formation of a business relationship. The intent is to set forth the general terms and conditions of this relationship, and the respective roles and responsibilities of each party. This is a binding letter of intent.

By signing this letter, the parties agree to the following terms:

- Advantus and Canefields would remain separate entities.
- Canefields products, defined as eco-friendly, alternative fiber paper products made from sugarcane fiber (bagasse) and/or wheat fiber, would be sold by Advantus, under the Canefields Paper, Wheatfields Paper or other customer private label brands as agreed to by the parties.
- Advantus and Canefields agree that this business relationship will be exclusive in respect to the sale of Canefields products in North America. Advantus agrees that it will not sell any other alternative fiber products sourced from anyone other than Canefields. Canefields agrees it will not sell any alternative fiber products to anyone outside of the business relationship with Advantus, without the express written permission of Advantus.
- Advantus will provide all operational functions necessary to carry out the sales of Canefields products. These functions include, but are not limited to, back office infrastructure (including EDI, customer service, accounting and information technology support), logistical support (warehousing, shipping), marketing support (website maintenance, collateral material development, customer catalog support), and field sales support from Advantus company personnel and selected manufacturers representatives. In addition, Advantus will buy and maintain the inventory necessary to operate this business relationship.
- Advantus will use reasonable efforts to sell Canefields products to existing Advantus accounts in the office products, mass market, drug and grocery and craft and hobby channels, in addition to working with Canefields on all other sales opportunities including OEM. Specifically, Advantus hereby warrants that it will use all reasonable efforts to secure sales of Canefields products into these accounts (but not limited to these accounts) listed below that Advantus does presently have Vendor Numbers with and is currently selling other Advantus product lines into:
  - United Stationers Supply Company
  - SP Richards
  - IS Group



Page 1 of 5

- ○ Trimega
- ○ Office Partners
- ○ Wal-Mart
- ○ Target
- ○ Costco
- ○ Staples
- ○ Office Depot
- ○ Office Max
- ○ WB Mason
- ○ Michaels
- ○ Hobby Lobby
- ○ Walgreens

- Canefields will provide product sourcing, supplier contacts and support, product development, product specifications and testing, maintain environmental certifications, call on key customers in all channels, and manage national sales force of manufacturer's representatives. Advantus will have final approval on product assortment, sku count and customer pricing. Advantus warrants that said approval will not be unduly withheld and Advantus will advance all opportunities that are based on sound financial judgment.

- Canefields will work with suppliers to ensure we receive comparable pricing to that previously given to Canefields. Canefields will work with suppliers to help protect Advantus and our relationship/business with our customers. Further, Canefields agrees not to do anything that would jeopardize our relationships/business with our customers.

- Advantus will maintain a separate P&L statement to account for all transactions under this relationship. This P&L will capture all sales, costs of goods, customer discounts, rebates and other customer program costs, travel and expenses, commissions, obsolete inventory and all other direct and indirect costs associated with transacting business under this business relationship, including but not limited to inbound freight, outbound freight, warehousing costs, insurance, and inventory carrying costs. Under some circumstances Canefields understands that Advantus may allocate certain expenses based on its good faith estimates. It's understood by both parties that expenses listed in this P&L apply to both Canefields expenses and Advantus expenses specific solely to activities involving Canefields products. Canefields will have the right to review the monthly P&L for accuracy prior to the issuance of the monthly royalty payment. A sample P&L statement is attached to this letter as Addendum A.

- Canefields will receive a royalty payment equal to 50% of the net profit (sales minus cost of goods minus all costs incurred to obtain, maintain, operate and service the business) from this business relationship, paid on a monthly basis. Advantus agrees to pay Canefields a minimum monthly royalty advance of $5000 per month for the first 6 months of this agreement. In the event that the calculated monthly royalty payment based on the 50/50 profit split is less than the monthly royalty advance of $5000 for the fist 6 months, the difference will be considered an advance against future royalties.

- Advantus will not purchase the existing inventory currently located at seven warehouses across the USA and owned by IFP (International Forest Products). Canefields may continue to sell off this inventory under the current IFP agreement, as it sees fit. However, Canefields agrees that no additional product will be sold through the current agreement with IFP once the existing inventory has been sold, and the IFP agreement will be terminated at that time. Advantus acknowledges that Canefields has been selling one copy paper product sku and converting reels via the IFP agreement. Advantus will ensure Advantus has copy paper inventory on hand prior to Canefields terminating the IFP agreement. This is to ensure a seamless transition from IFP to Advantus for the customers that are relying on the supply of Canefields paper.



- Advantus and Canefields will mutually agree on a warehousing and stocking strategy going forward. All future purchases under this business relationship must be made directly by Advantus to the suppliers.
- Advantus will not assume any liabilities or prior obligations of Canefields. Any liabilities or obligations of Canefields prior to this business relationship will remain the sole responsibility of Canefields.
- All transactions and discussions under this business relationship are confidential.
- Canefields USA warrants that it has the right to use the Canefields brand name by formal agreement with Canefields Australia and this right will transfer and apply to this business relationship with Advantus. Canefields USA will provide a letter from Canefields Australia acknowledging their agreement.
- The term of this agreement will be 3 years with automatic annual renewals unless either party provides written termination with a minimum of 180 days notice of the anniversary date of the agreement.
- The Agreement may be terminated by either party if sales of the Products do not exceed $1 million annual run rate within 24 months.
- Canefields agrees not to terminate this Agreement if sales exceed $2 million annual run rate within the initial 3 year term.
- Advantus will have the right to sell Canefields products beyond the term of the agreement, in order to discontinue products in conjunction with customer POG and catalog cycles.

The above points represent the previous discussions between Advantus and Canefields regarding forming a business relationship and are meant to capture the nature of the proposed relationship. This letter of intent is binding and will serve as the basis for developing a formal agreement and contract. The parties agree to execute a formal contract no later than January 31, 2012.

If you agree with the above, please sign in the space provided below.

Best regards,



Harry Chernek
Executive Vice President, Sales


The above points are acceptable.
December 22, 2011

Jeff Allen:

Harry Chernek:

Addendum A.

**Pro Forma P&L**

| | | |
|---|---|---|
| Sales | $ | - |
| less | | |
| Freight Claims | $ | |
| Sales Discounts | $ | - |
| Sales Allow | $ | - |
| Noncompliance Shipping | $ | - |
| | | |
| **= Net Sales** | $ | - |
| | | |
| less COGS (including freight in) | $ | - |
| less Freight In | | |
| less Variances | | |
| | | |
| **= Gross Profit** | $ | - |
| | | |
| less Distribution Expense | $ | - |
| | | |
| **= Gross Profit after dist exp** | $ | - |
| | | |
| **less SG&A** | | |
| Salaries | $ | - |
| P/R Taxes | $ | - |
| Health Ins | $ | - |
| Dental Ins | $ | - |
| 401k | $ | - |
| Workers Comp | $ | - |
| PTO | $ | - |
| Overtime | $ | - |
| LTD Insurance | $ | - |
| Travel | $ | - |
| Lodging | $ | - |
| Meals & Entertainment | $ | - |
| Computer Expense | $ | - |
| Telephone | $ | - |
| Office Supplies | $ | - |
| Merchant CC Fees | $ | - |
| Advertising & Rebates | $ | - |
| Obsolete Inv Write off | $ | - |
| Commissions–Mfg Reps | $ | - |
| Royalties | $ | - |
| Marketing | $ | - |
| Printed Materials | $ | - |
| Testing Fees | $ | - |
| Product Development | $ | - |
| Prod Dev Freight Exp | $ | - |



| | | |
|---|---|---|
| Samples | $ | - |
| Trade Show | $ | - |
| Dues & Subscriptions | $ | - |
| Freight Out | $ | - |
| Web Design & Maint | $ | - |
| Accounting Fees | $ | - |
| Legal Fees | $ | - |
| Interest Expense | $ | - |
| Other (Income)/Expense | $ | - |
| | | |
| **Total SG&A** | $ | - |
| | | |
| = Gross Income | $ | - |



EXHIBIT 3

**User**

From:       "Jeff Allen" <jeff@canefieldsusa.com>
Date:       Thursday, April 19, 2012 11:46 AM
To:         "Harry Chernek" <hchernek@advantus.com>
Attach:     CF_ADV_Signed_Agreement.jpg
Subject:    Agreement

Harry,

Attached please find page 9 of the agreement signed by Morgan and by me.

Please send me a signed copy from Advantus for my records.

Jeff

N WITNESS WHEREOF, each of the parties has caused its duly authorized officer(s) to
ement on its behalf as of the date first set forth above.

**"C-USA PARTIES"**

CANEFIELDS USA, LLC, a Delaware limited
company

By: _____

Print Name: _Jeff Allen_____

Title: _Chairman / CEO_____


_____

Jeff Allen, individually


**"ADVANTUS"**

ADVANTUS, CORP., a Florida corporation


By: _____

Print Name: _____

Title: _____


**NTED TO:**

ersigned consents to the terms and conditions of this Agreement, including without limit;
nent of Advantus by the C-USA Parties as the exclusive distributor of the Canefields Pro
merica as per this Agreement.

CANEFIELDS ECO PRODUCTS PTY LTD (A

By: _____

Print Name: _MORGAN RAJ_____

Title: _CEO_____

EXHIBIT 4

## User

| | |
|---|---|
| **From:** | "Harry Chernek" <hchernek@advantus.com> |
| **Date:** | Monday, April 23, 2012 9:10 AM |
| **To:** | "Jeff Allen" <jeff@canefieldsusa.com> |
| **Attach:** | Canefield Execution Version April 20 2012.pdf; Travel expense report – Exhibit B.XLS |
| **Subject:** | FW: Agreement |

Jeff

Please see below from Kevin. Please resign this copy, and also initial every page of the agreement to make this official. Also, please sign in blue ink. Please have Morgan do the same. It's ok to send back as a PDF after signing. Thanks.

Harry


**Harry Chernek**
Executive Vice President, Sales
Advantus Corp.
12276 San Jose Boulevard
Building 618
Jacksonville, FL, 32223 USA

904.421.1048 telephone
904.626.0954 cell
904.421.3878 facsimile

hchernek@advantus.com
http://www.advantus.com

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

**From:** Kevin Carpenter
**Sent:** Friday, April 20, 2012 3:15 PM
**To:** Harry Chernek
**Cc:** Erica Maron
**Subject:** RE: Agreement

Harry,

Attached is the execution version. Please have them resign this version, initialing all pages. The only change I made was to delete "draft" from the first page. It is missing the form of expense report if you want to include that.

Kevin


**Kevin Carpenter**
President

ext 8240
904.421.1038 phone

kcarpenter@advantus.com

---

**From:** Harry Chernek
**Sent:** Thursday, April 19, 2012 2:19 PM
**To:** Kevin Carpenter
**Cc:** Erica Maron
**Subject:** FW: Agreement

Kevin

Do you want to sign the Canefields agreement? Attached is their signature page and also a clean copy of the agreement.

Harry


**Harry Chernek**
Executive Vice President, Sales

ext 8276
904.421.1048 phone
904.626.0954 mobile

hchernek@advantus.com

---

**From:** Jeff Allen [mailto:jeff@canefieldsusa.com]
**Sent:** Thursday, April 19, 2012 11:46 AM
**To:** Harry Chernek
**Subject:** Agreement

Harry,

Attached please find page 9 of the agreement signed by Morgan and by me.

Please send me a signed copy from Advantus for my records.

Jeff

## DISTRIBUTOR AGREEMENT

This Agreement (this "Agreement") made as of the $\underline{2o}$ day of $\underline{\text{April}}$, 2012, by and between Canefields USA, LLC, a Delaware limited liability company ("Canefields USA"), Jeff Allen ("Mr. Allen"; collectively, Canefields USA and Mr. Allen are the "C-USA Parties") and Advantus, Corp., a Florida corporation ("Advantus").

### BACKGROUND

A.        Mr. Allen previously entered into an agreement with Canefields Eco Products Pty Ltd (Australia) ("Canefields Australia") pursuant to which he was appointed as the sole distributor for the "Canefields Products" (defined below) in North America (the "Master Distributor Agreement").

B.        Mr. Allen, Canefields USA and Advantus entered into a binding letter of intent (the "LOI") pursuant to which Advantus agreed to assume certain responsibilities.

C.        The parties desire to enter into this Agreement to set forth their rights and responsibilities.

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration hereinafter set forth, the parties hereto agree as follows:

1.        Appointment. C-USA Parties hereby appoint Advantus as the sole and exclusive distributor for all products that are subject to the Master Distributor Agreement (the "Canefields Products") for North America (the "Territory") and will cooperate with Advantus regarding that appointment. Advantus accepts that appointment and agrees to comply with its obligations as a distributor as set forth in this Agreement.

2.        Responsibilities of Advantus.

(a) *Operations*. Advantus will provide all operational functions necessary to carry out the sales of Canefields Products. These functions include, but are not limited to, back office infrastructure (including electronic data interface, customer service, accounting and information technology support), logistical support (warehousing, shipping), marketing support (website maintenance, collateral material development, customer catalog support), and field support from Advantus company personnel and selected manufacturers' representatives. In addition, Advantus will be solely responsible for buying and maintaining the proper inventory necessary for this distributorship.

(b) *Sales*. Advantus will use commercially reasonable efforts to sell and market Canefields Products to existing Advantus accounts in the office products, mass market, drug and grocery and craft and hobby channels, in addition to working with C-USA Parties on all other sales opportunities, including OEM. Specifically, Advantus hereby agrees that it will use reasonable efforts to secure the sales of Canefields Products to, but not limited to, the following customer accounts with which Advantus presently has vendor numbers and is currently selling other Advantus product lines: (i) United Stationers Supply Company; (ii) SP Richards; (iii) IS Group; (iv) Trimega; (v) Office Partners; (vi) Wal-Mart; (vii) Costco; (viii) Target; (ix) Staples; (x) Office Depot; (xi) Office Max; (xii)WB Mason; (xiii) Michaels; (xiv) Hobby Lobby; and (xv) Walgreens.

(c) *Profit and Loss Accounting.* Advantus will create a profit and loss accounting "center" (the "P&L Center") within Advantus, and separate profit and loss statements (the "P&L Statements") will be prepared to account for all transactions under the distributorship relationship created by this Agreement. The P&L Center will "capture" all sales, costs of goods, customer discounts, rebates and other customer program costs, travel and expenses, commissions, obsolete inventory and all other direct and indirect costs associated with transacting business under the distributorship relationship created by this Agreement, including, but not limited to, inbound freight, outbound freight, warehousing costs, insurance and inventory carrying costs. Additionally, all payments made to Canefields Australia will be entered on the P&L Statements as deductions. Under some circumstances, Advantus may allocate certain expenses to the P&L Center based on good faith estimates (e.g., for insurance, accountants); which estimates will be reasonably detailed if requested in writing by the C-USA Parties. C-USA Parties will have the right to review the monthly P&L Statement for accuracy. A sample P&L Statement is attached to this Agreement as Exhibit A.

(d) *Expense Reporting.* C-USA Parties will complete and submit a monthly expense report substantially in the form attached to this Agreement as Exhibit B. For expenses previously approved in writing by Advantus, Advantus will reimburse C-USA Parties within thirty (30) days after receiving the expense reports.

3. Responsibilities of C-USA Parties.

(a) *General.* C-USA Parties will provide product sourcing, supplier contacts and support, product development, product specifications and testing, use commercially reasonable efforts to acquire and maintain environmental certifications, call on key customers in all channels, and manage national sales force of manufacturer's representatives. Advantus will have final approval on product assortment, SKU count and customer pricing. Advantus agrees that the aforementioned approval will not be unreasonably withheld, and Advantus will advance all opportunities that are based on sound financial judgment at Advantus' sole discretion.

(b) *Suppliers.* The current suppliers of the Canefields products to the C-USA Parties include: Tamilnadu Newsprint and Paper Limited (TNPL), Steinbeis, Ashok Notebook, Bafna Exports, KR Papers, Seshasayee Paper and Boards LTD, Shreyans Paper, American Eagle Paper and Nightingale Products. It is understood and agreed that throughout the course of this Agreement, C-USA Parties will identify and bring in additional suppliers and manufacturers of the Canefields Products, and to the extent Advantus purchases Canefields Products from them, this Agreement shall apply to the Canefields Products purchased from those suppliers and manufacturers.

(c) *Vendor and Customer Relationships.* C-USA Parties will use commercially reasonable efforts to work with suppliers to ensure Advantus receives comparable pricing to that previously given to C-USA Parties. C-USA Parties will work with suppliers to help protect Advantus and the relationship/business that Advantus maintains with its customers. Further, C-USA Parties agrees not to take any actions or make any statements that could potentially damage the relationships/business that Advantus has with its customers.



4.  Distributorship Fees.

(a) *General.* Based on the P&L Statement, Canefields USA will be paid Fifty Percent (50%) of the "net profits" (as defined below) arising from the Canefields Products distributorship business of Advantus (the "Distributorship Fee"). Payments will be made on a monthly basis on a cumulative profit and loss statement (e.g., to the extent that 50% of the cumulative net profits exceeds the cumulative sum of prior payments, then a payment will be due). For purposes of this Agreement, the term "net profits" shall mean gross profits, less all direct and indirect costs associated with transacting business under the distributor relationship created by this Agreement as calculated in the P&L Center.

(b) *Example.* For example, assume with respect to the P&L Center that (i) the first net profits were generated in the month of August 2012 in an amount of $20,000, then a Distributorship Fee of $10,000 would be payable to Canefields USA; and (ii) there were a loss in September 2012 of $2,000, and no Distributorship Fee is payable for that month; and (iii) $30,000 of net profits were generated in October 2012, then a $14,000 Distributorship Fee would be payable to Canefields USA (factoring in 50% of the loss from the prior month). The cumulative net profits for those three (3) months would be $48,000, resulting in $24,000 of Distributorship Fees.

(c) *Audit and Resolution of Distributorship Fee Issues.* **Exhibit C**, which is incorporated herein by reference, sets forth the procedures for audit and resolution of Distributorship Fee issues.

(d) *Advance.* A minimum monthly Distributorship Fee advance of $2,500 per month shall be paid by Advantus to Canefields USA for the first six (6) months of this Agreement, after which there will be no advances. These advances may be offset against the actual Distributorship Fees until recovered in full by Advantus.

(e) *Consulting Fee.* Advantus will pay a one-time flat consulting fee to Mr. Allen in the amount of $15,000.

5.  Payments to Canefields Australia. Advantus will pay a fee of two percent (2%) of the purchase price of all Canefields Products ordered by Advantus through Canefields Australia. The payments will be issued as per payment terms negotiated between Advantus and Canefields Australia. For example: Advantus purchases $100,000 of paper from TNPL, and pays Canefields Australia $2,000. These payments are a deduction that Advantus shall take into account on the P&L Statements used to calculate the Distributorship Fee.

6.  Term.

(a) *Initial Term; Automatic Renewal.* The term of this Agreement will be for a period of three (3) years, commencing as of the date of this Agreement, with automatic annual renewals continuing thereafter, unless either party provides written notice of non-renewal with a minimum of one hundred eighty (180) days advance notice of the renewal date of this Agreement.

(b) *Termination – Minimum Sales.* This Agreement may be terminated by either party if sales of the Canefields Products do not exceed One Million Dollars ($1,000,000) annual run rate before the end of the twenty four (24) month period commencing as



of the date of this Agreement.  C-USA Parties may not, at any time, terminate, or elect to not renew, under Paragraph 6(a) above, this Agreement if the sales of Canefields Products exceed Two Million Dollars ($2,000,000) annual run rate within the initial three (3) year term.

(c) *Termination – Material Breach.*  If either party materially breaches this Agreement (the "Defaulting Party"), then the other party (the "Non-Defaulting Party") may terminate this Agreement if: (i) the Non-Defaulting Party delivers a written notice in accordance with the notice provisions of this Agreement describing the material breach and notifying the Defaulting Party that this Agreement will be terminated unless the breach is cured; and (ii) the Defaulting Party fails to cure the material breach within ten (10) business days after receipt of the notice of default; provided, however, that if the cure cannot be reasonably effected within ten (10) business days, then the cure period is extended to be one (1) month.

(d) *Post-Termination Obligations.*  Upon termination by any party in accordance with the above, then effective on the date of termination of this Agreement: 1) all rights granted under the Master Distributor Agreement shall revert back to C-USA Parties; and 2) Advantus agrees not to contact suppliers of Canefields USA for the purpose of ordering products.  Further, if Advantus terminates this Agreement for any reason other than breach by C-USA Parties, or if C-USA Parties properly terminate this Agreement due to breach by Advantus, Advantus agrees not to engage in the sales of any products that would compete with the Canefields Products for a period of three (3) years following termination, other than to the extent needed to continue the sales of Canefields Products or similar types of products due to customer planogram and catalog cycles. Advantus acknowledges and agrees that the terms and provisions of this section are reasonable in scope, geographical area and duration and agrees not to challenge the reasonableness or enforceability of this section in any proceeding to enforce the terms hereof.

(e) *Post-Termination Sales.* Advantus will have the right to purchase and sell Canefields Products beyond the term of this Agreement, in order to coordinate the discontinuing of products in conjunction with customer planogram and catalog cycles.

7.    Use of Name.  C-USA Parties warrant they have the right to use the "Canefields" brand name by formal agreement with Canefields Australia, and that this right will transfer and apply to this distributorship relationship with Advantus, and Advantus may use the "Canefields" brand name to the extent permitted by Canefields Australia.  All rights to use the "Canefields" brand name, or any other brand names that may be covered under the Master Distributor Agreement subsequent to the execution of this Agreement, shall revert to C-USA Parties in the event of termination of this Agreement.  However, Advantus shall have the right to use all brand names covered under the Master Distributor Agreement in order to discontinue Canefields Products in conjunction with customer planogram and catalog cycles.

8.    Transitional Matters.

(a) *Excluded Inventory.*  Advantus will not purchase the existing inventory currently located at seven warehouses across the United States and owned by International Forest Products ("IFP").  C-USA Parties may continue to sell off this existing inventory under the current IFP agreement, as they see fit. However, C-USA Parties agree that no additional Canefields Products will be sold through the current



agreement with IFP once the existing inventory has been sold, and the IFP agreement will be terminated at that time.

(b) *Sufficient Inventory for Transition.* Advantus acknowledges that C-USA Parties have been selling one copy paper product SKU and converting reels via the IFP agreement. Advantus will ensure Advantus has copy paper inventory on hand prior to C-USA Parties terminating the IFP agreement. This will ensure a seamless transition from IFP to Advantus for the customers that are relying on the supply of Canefields Products.

9.  Special Provisions.

(a) *Exclusivity.* Advantus agrees that it will not sell any other "alternative fiber products" sourced from anyone, other than C-USA Parties. C-USA Parties agree that they will not sell Canefields Products or any other "alternative fiber products" to anyone other than Advantus, without advance written permission from Advantus (other than Advantus consenting to the sale by the C-USA Parties of the existing inventory as set forth in Paragraph 8(a) above).

(b) *Stocking.* Advantus and C-USA Parties will cooperate to develop a warehousing and stocking strategy. All future purchases under this distributorship relationship will be made directly by Advantus to the suppliers.

(c) *No Assumed Liabilities.* Advantus is not assuming and will not assume any liabilities or obligations of C-USA Parties. Any liabilities or obligations of C-USA Parties prior to this distributorship relationship will remain the sole responsibility of C-USA Parties.

(d) *Confidentiality.* The terms and provisions of this Agreement shall be confidential information and the parties shall not disclose them, except (i) as required by law; and (ii) as necessary for preparation of tax returns; (iii) disclosures to Canefields Australia; and (iv) as mutually agreed to in writing by the parties hereto.

(e) *Master Distributor Agreement.* With respect to the Master Distributor Agreement, both C-USA Parties and Advantus agree: (i) to cooperate in good faith to maintain a mutually profitable distributor relationship with Canefields Australia; (ii) not to intentionally violate any of the provisions of the Master Distributor Agreement, and comply with any and all provisions in the Master Distributor Agreement that are applicable to Advantus as a result of Advantus entering into this Agreement; and (iii) not to consent to an amendment or termination of the Master Distributor Agreement without the written consent of the other.

(f) *No Partnership or Agency Created.* The parties shall not be partners, joint venturers, principal and agent, or any other similar relationship. Advantus shall not, by this Agreement, be deemed the agent or legal representative of C-USA Parties for any purpose whatsoever, nor shall the C-USA Parties be deemed to be the agent or legal representative of Advantus for any purpose whatsoever. Advantus is not authorized to assume or create any obligation or responsibility, express or implied, on behalf or in the name of C-USA Parties, or to bind C-USA Parties in any manner whatsoever (or hold itself out as having the power to do so). Likewise, none of the C-USA Parties is authorized to assume or create any obligation or responsibility, express or



implied, on behalf or in the name of Advantus, or to bind Advantus in any manner whatsoever (or hold themselves out as having the power to do so).

10. <u>Miscellaneous.</u>

(a) *Notices.* All notices, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered by personal delivery, facsimile transmission, electronic (email) transmission or overnight courier (e.g., FedEx) with delivery confirmation from such service, or three (3) days after mailing (as evidenced by postmark or appropriate receipt) by certified mail, return receipt requested, postage prepaid to the address set forth below.  If notice is given by facsimile or electronic transmission, such notice shall be deemed effective when delivery is confirmed by recipient.  Each party may change its address for notices by giving notice thereof in accordance with this paragraph.

**To the C-USA Parties at:**

Canefields USA
Attn.: Jeff Allen
135 Summit Road Extension
Newport, NY  13416
Fax No.: 866-554-4352

**To Advantus at:**

Advantus, Corp.
Attn:  Mr. Kevin Carpenter
12276 San Jose Boulevard
Suite 618
Jacksonville, FL 32223
Fax No.: 904-482-0099

**With a copy to:**

Averitt & Co., PA
Attn:  Barry C. Averitt
3010 Third Street South, Suite B
Jacksonville Beach, FL  32250
Fax No.:  904-758-0546

**With a copy to:**

Bond, Schoeneck, & King, PLLC
Attn.: Daniel Pautz
One Lincoln Center
110 West Fayette Street
Syracuse, NY  13202-1355
Fax No.: 315-218-8000

(b) *Governing Law.* The validity and construction of this Agreement shall be governed by the laws of the State of Florida, without reference to its principles of conflicts of law.

(c) *Arbitration and Dispute Resolution.* The parties agree that in the event of any dispute between them arising out of this Agreement or arising in any way out of the relationship created by this Agreement (regardless of whether such dispute is couched in terms of a contract, tort, and/or statutory claim or cause of action) the dispute shall be resolved by binding arbitration. Such arbitration shall be in accord with the then-existing Rules of the American Arbitration Association ("AAA") except as otherwise provided in this paragraph. Without regard to the then-existing Rules of the AAA, no more than one arbitrator will be appointed to hear the case, and the arbitrator will be selected in accord with the AAA's selection procedures for a neutral arbitrator. The arbitrator shall, at a minimum, be a licensed member of The Florida Bar with at least ten years of experience representing clients in contract disputes. The venue for such arbitration shall be within Duval County, Florida, with the final hearing being in Duval County, Florida. The arbitration shall be final and binding, and the arbitrator shall have the authority to award costs and attorneys' fees as otherwise provided under this Agreement or Florida law. The exclusive forum and venue for any action seeking confirmation, modification, or vacation of the arbitrator's award shall be a court of competent jurisdiction in Duval County, Florida and each of the parties irrevocably consents to the personal jurisdiction of such court for such purpose. Arbitration in accordance with this paragraph shall be the sole and exclusive remedy for dispute resolution between the parties; provided, however, that where injunctive relief is sought to protect a trade secret or enforce the confidentiality provision of this Agreement, either party may initiate a court action to obtain such equitable relief, in which case the parties agree that the sole and exclusive forum to resolve such equitable dispute will be a court of competent jurisdiction within Duval County, Florida and each of the parties irrevocably consents to the jurisdiction of such court and waives any objection to personal jurisdiction or venue. In the event of a dispute involving claims for both injunctive relief and damages, the parties agree that the damages claims shall be stayed or severed to allow such claims to be decided by the arbitrator as otherwise provided herein.

(d) *Counterparts; Facsimile Signatures.* This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures shall have equal force and effect as original signatures.

(e) *Severability.* If any provision of this Agreement is held invalid, illegal or unenforceable as written, (i) the remaining provisions of this Agreement shall remain in full force and shall not be affected in any way and (ii) the parties agree that the court interpreting this Agreement shall have the power and authority to reduce the scope or duration of the provision found unenforceable, as the case may be, so that in its reduced form it is and shall be enforceable to the fullest extent permitted by applicable law.

(f) *Attorneys' Fees.* If any legal action, arbitration proceeding or similar proceeding is brought for the enforcement or interpretation of this Agreement or any of its provisions, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees in addition to any other relief which may be granted.

(g) *Entire Agreement*.  This Agreement contains the entire understanding of the parties and shall not be amended except by a written instrument hereafter signed by the parties hereto.

[SIGNATURES APPEAR FOLLOWING PAGE(S)]

IN WITNESS WHEREOF, each of the parties has caused its duly authorized officer(s) to execute this Agreement on its behalf as of the date first set forth above.

"C-USA PARTIES"

CANEFIELDS USA, LLC, a Delaware limited liability company

By: _____
Print Name: _____
Title: _____


_____
Jeff Allen, individually

"ADVANTUS"

ADVANTUS, CORP., a Florida corporation

By: _____
Print Name: KEVIN CARPENTER
Title: VICE PRESIDENT


**CONSENTED TO:**

The undersigned consents to the terms and conditions of this Agreement, including without limitation the appointment of Advantus by the C-USA Parties as the exclusive distributor of the Canefields Products for North America as per this Agreement.

CANEFIELDS ECO PRODUCTS PTY LTD (AUST)


By: _____
Print Name: _____
Title: _____

Exhibit A

Pro Forma P&L

| | |
|---|---|
| Sales | $          - |
| less | |
| Freight Claims | $          - |
| Sales Discounts | $          - |
| Sales Allow | $          - |
| Noncompliance Shipping | $          - |
| | |
| = Net Sales | $          - |
| | |
| less COGS (including freight in) | $          - |
| less Freight In | |
| less Variances | |
| | |
| = Gross Profit | $          - |
| | |
| less Distribution Expense | $          - |
| | |
| = Gross Profit after dist exp | $          - |
| | |
| less SG&A | |
| Salaries | $          - |
| P/R Taxes | $          - |
| Health Ins | $          - |
| Dental Ins | $          - |
| 401k | $          - |
| Workers Comp | $          - |
| PTO | $          - |
| Overtime | $          - |
| LTD Insurance | $          - |
| Travel | $          - |
| Lodging | $          - |
| Meals & Entertainment | $          - |
| Computer Expense | $          - |
| Telephone | $          - |
| Office Supplies | $          - |
| Merchant CC Fees | $          - |
| Advertising & Rebates | $          - |
| Obsolete Inv Write off | $          - |
| Commissions-Mfg Reps | $          - |
| Royalties | $          - |
| Marketing | $          - |
| Printed Materials | $          - |
| Testing Fees | $          - |
| Product Development | $          - |
| Prod Dev Freight Exp | $          - |
| Samples | $          - |

| | | |
|---|---|---|
| Trade Show | $ | - |
| Dues & Subscriptions | $ | - |
| Freight Out | $ | - |
| Web Design & Maint | $ | - |
| Accounting Fees | $ | - |
| Legal Fees | $ | - |
| *Interest Expense | $ | - |
| Other (Income)/Expense | $ | - |
| | | |
| Total SG&A | $ | - |
| | | |
| = Gross Income | $ | - |

*Interest expense will be calculated as Prime plus one.

<u>Exhibit B</u>

Form of Expense Report

Exhibit C

Right to Audit P&L Statement

i.  <u>Notice of Audit.</u>Canefields USA shall have the right to audit the amount of the Distributorship Fee set forth in the P&L Statement by providing Advantus with written notice requesting an audit (a "Notice of Audit") within sixty (60) days from delivery to Canefields USA of the P&L Statement. If a Notice of Audit is not provided in that time period, then Canefields USA waive any rights to audit that P&L Statement or the amount of that Distributorship Fee.

ii. <u>Audit Procedures.</u>   Within thirty (30) days of receipt of the Notice of Audit, Advantus shall provide Canefields USA with access to reasonably sufficient underlying financial information ("Audit Information") so that Canefields USA may audit the applicable P&L Statement.

iii. <u>Notice of Disagreement.</u>   If Canefields USA believes the Distributorship Fee is understated, then within thirty (30) days after delivery of the Audit Information to Canefields USA, it may give a notice to Advantus that it objects to the amount of the Distributorship Fee via a written statement, which statement shall state the basis of Canefields USA's objection with reasonable particularity (a "Notice of Disagreement").

iv. <u>Resolving Matters in Notice of Disagreement.</u>   For a period of twenty (20) days after Advantus receives the Notice of Disagreement, Advantus and Canefields USA will use good faith efforts to resolve the objections set forth in the Notice of Disagreement. At the end of that twenty (20) day "resolution" period, either party may require that the matters that remain in dispute (the "Remaining Disputed Issues") be promptly submitted to an independent accounting firm mutually agreed upon by the parties (the "Independent Accounting Firm") for review and resolution; provided, however, that if Canefields USA and Advantus do not agree on such an accounting firm, Canefields USA and Advantus shall each select an accounting firm and these two accounting firms together shall select a third accounting firm to be the Independent Accounting Firm. The Independent Accounting Firm will determine procedures for such arbitration, subject to the terms hereof; provided that the parties shall make all submissions to the Independent Accounting Firm within thirty (30) days of the selection of the Independent Accounting Firm. The Independent Accounting Firm will render a decision resolving such Remaining Disputed Items within sixty (60) days after completion of submissions to the Independent Accounting Firm. The Independent Accounting Firm will determine the final Distributorship Fee solely based on submissions made by Advantus and Canefields USA consistent with the terms hereof (and not by independent review).

v.  <u>Fees.</u>  Fees and costs incurred for such Independent Accounting Firm as a result of such dispute shall be allocated between Advantus and Canefields USA in proportion to the respective amounts of the *"Total Disputed Amount"* (defined as the difference between Canefields USA's calculation of the Remaining Disputed Issues and Advantus' calculation of the Remaining Disputed Issues) which are resolved against them. For example, if with respect to the Remaining Disputed Issues, Advantus calculates the Distributorship Fee to be $100x, and Canefields USA calculates the Distributorship Fee to be $150x (so that the Total Disputed Amount is $50x); and the Independent Accounting Firm determines that the Distributorship Fee is $140x ($10x is resolved against Canefields USA, and $40x is resolved against Advantus), then the fees and expenses of the Independent Accounting Firm would be allocated 80% to Advantus (i.e., $40x/$50x) and 20% (i.e., $10x/$50x) to Canefields USA.



vi. <u>Reconciliation Payment.</u> If the Independent Accounting Firm determines that any additional Distributorship Fee is due Canefields USA, Advantus shall promptly pay any such additional Distributorship Fee to Canefields USA. If the Independent Accounting Firm determines that Advantus overpaid the Distributorship Fee, then Canefields USA shall promptly pay that overpayment amount to Advantus.

vii. <u>Advantus Obligations Satisfied with Compliance</u>. If Advantus complies with the procedure set forth in this Exhibit C, Advantus shall be deemed to have complied with the requirements of this Agreement with respect to claims relating to the Distributorship Fee or otherwise based on the P&L Statement.

viii.<u>Exclusive Remedy.</u>     Canefields USA's rights to audit the P&L Statement or Distributorship Fee set forth in this paragraph are Canefields USA's exclusive and only rights or remedies to make a claim with respect to the amount of the Distributorship Fee or the P&L Statement.

Travel Expense Report - Part of Exhibit B

ADVANTUS.

# Travel Expense Report

Advantus Corp.
12276 San Jose Blvd.
Building 618
Jacksonville, FL 32223
Tel: 904.482.0091
Fax: 904.482.0099
www.advantus.com

**Name**
**PC Code/Dept Code**
**Month/Period**

| Profit Center (PC) Code | |
|---|---|
| Corporate | 001 |
| ISD | 300 |
| C&H | 200 |
| Sulyn | 250 |
| PR | 500 |
| FL | 550 |
| Z Intl | 650 |
| SJW | 700 |

| Department Codes | |
|---|---|
| Admin | 10 |
| IT,Acctg,HR | 60 |
| Cust Svc | 20 |
| Sales & Mktg | 30 |
| Warehouse | 40 |

**Authorized by**

**Reimbursement/Mile** | 0.51 |

| Date | Description of Expense | *Tradeshow | Meals & Entertainment | Travel (includes Lodging and Auto) | Employee Relations | Factory Expenses | Phone | Office Supplies | **Misc. | Miles (Personal Car Only) | Mileage Reimbursement | Total Reimbursement |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | $0.00 |

Travel Expense Report - Part of Exhibit B

| Accounting Use Only | | Research | 84250 | 84200 | 84400 | 62000 | 85400 | 84500 | 0 | Travel Advance | Employee Reimbursement |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 0 | $0.00 | $0.00 | |

Total Auto (including mileage)  Acct #: 84200   $0.00

\* If all charges related to a tradeshow, please list all charges under the Tradeshow column.

\*\* If a charge is listed under the Misc. column, please write on your attached receipt a description of the expense.

EXHIBIT 5

## User

| | |
|---|---|
| **From:** | "Jeff Allen" <jeff@canefieldsusa.com> |
| **Date:** | Friday, April 27, 2012 9:07 AM |
| **To:** | "Harry Chernek" <hchernek@advantus.com> |
| **Subject:** | Re: Agreement |

Harry,

I checked with my attorneys, and they also want me to have "draft" removed and have signed originals in order to make this official and legitimate. So I would need five originals sent to me signed and initialed by Kevin -- two for my records, two for Morgan's, and one to send back to Advantus.

Before we get to that though, the following needs to be addressed one way or another:

- I must have around a $500k solution with Advantus on the front end of this.
- I want to see the P&L center Advantus has been keeping that covers all the activity through the present, and want to discuss having it potentially serve as a model / precedent that gets included as an exhibit in the agreement
- I have to submit an expense report to Advantus that covers all my expenses through the present, and see how that is processed by Advantus. This should also potentially be included as an exhibit in the agreement to serve as a precedent.
- The agreement needs to be modified to remove the language in the termination clause that prohibits Canefields from terminating based on run rate or sales.

Here is my situation: the company has around $500k in debt as I noted from the beginning. You keep telling me that this is not going to be profitable for another 2-3 years. There is no way I can hold off the parties I owe this money to for another 2-3 years just by saying "trust me". As well, my wife suffers from a chronic illness and has substantial medical bills, and can't work outside the home. So it is a pretty challenging existence here, and one that I am not willing or able to endure for another 2-3 years. If it were just Jeff, or if Canefields were debt-free, you wouldn't be getting this email. But with the wife factored in I can't go a few years not knowing if things are going to work out with this P&L center or not, and wondering what I'm going to do when the $30k I'm getting out of this runs out, and the whole time knowing I can't get out of it if it does go poorly.

I have been thinking that I could simply get the products placed together with you, establish some product flow and revenue, and then maybe sell some equity to erase the debt and generate some salary for myself to cover any medical expenses in the event profits didn't come in fast enough. However, I've been talking to people that would potentially consider doing this, and they all reject the idea because of the way the P&L center is written into the agreement, which creates a glaring unknown element for Canefields and for any potential investor. I may fully trust you to be fair, but no private equity person that doesn't know Advantus is going to no matter how convincing I may be about it. The agreement is written to show the P&L to be determined by Advantus, not Canefields-Advantus. So anyone else is looking at this saying "these guys can put whatever they want into this P&L, and there's nothing you can do about it, and by the way – they are going to tell you what your product mix is going to be and maybe they will approve your expenses and maybe they won't, and by the way, you

really can't get out of it". Your agreement removes that private equity play for me leaving me reliant on Advantus and hoping things work out. Not a good situation.

I have to find a solution for this debt consolidation that is going to happen a whole lot faster than 2-3 years. I'll be getting dragged into court in less time than that, and probably be out of my house due to no income. I'm open to whatever solves this that everybody can live with, but it has to be solved.

Lastly I have to say I think what I bring stands to double or triple Advantus. You are basically becoming the TOPS of sustainable paper, but you also get to sell all the key OEM's as well – you said yourself this is the best opportunity you've seen come along. This debt issue would be the negative side of that, but a reality I have to do something about one way or another unfortunately.

Your thoughts please.

Jeff

**From:** Harry Chernek
**Sent:** Monday, April 23, 2012 9:10 AM
**To:** Jeff Allen
**Subject:** FW: Agreement

Jeff

Please see below from Kevin. Please resign this copy, and also initial every page of the agreement to make this official. Also, please sign in blue ink. Please have Morgan do the same. It's ok to send back as a PDF after signing. Thanks.

Harry

**Harry Chernek**
Executive Vice President, Sales
Advantus Corp.
12276 San Jose Boulevard
Building 618
Jacksonville, FL, 32223 USA

904.421.1048 telephone
904.626.0954 cell
904.421.3878 facsimile

hchernek@advantus.com
http://www.advantus.com

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

**From:** Kevin Carpenter
**Sent:** Friday, April 20, 2012 3:15 PM
**To:** Harry Chernek
**Cc:** Erica Maron
**Subject:** RE: Agreement

Harry,

Attached is the execution version. Please have them resign this version, initialing all pages. The only change I made was to delete "draft" from the first page. It is missing the form of expense report if you want to include that.

Kevin



**Kevin Carpenter**
President

ext 8240
904.421.1038 phone

kcarpenter@advantus.com


**From:** Harry Chernek
**Sent:** Thursday, April 19, 2012 2:19 PM
**To:** Kevin Carpenter
**Cc:** Erica Maron
**Subject:** FW: Agreement

Kevin

Do you want to sign the Canefields agreement? Attached is their signature page and also a clean copy of the agreement.

Harry


**Harry Chernek**
Executive Vice President, Sales

ext 8276
904.421.1048 phone
904.626.0954 mobile

hchernek@advantus.com

**From:** Jeff Allen [mailto:jeff@canefieldsusa.com]
**Sent:** Thursday, April 19, 2012 11:46 AM
**To:** Harry Chernek
**Subject:** Agreement

Harry,

Attached please find page 9 of the agreement signed by Morgan and by me.

Please send me a signed copy from Advantus for my records.

Jeff

EXHIBIT 6



## PAPER FROM SUGAR CANE FIBER

# MEMORANDUM
*This is a Confidential Document*

TO: Harry Chernek, for Advantus

FROM: Jeff Allen, for Canefields USA

DATE: June 14th, 2012

**RE.: Termination**

This is a formal notice that Canefields USA is terminating its association with Advantus Corp effective immediately. A summary of the primary reasons for this decision follows:

- The parties have been unable to reach an agreement since negotiations began in November of 2011, and it has become clear no acceptable agreement can be reached.
- Advantus has withheld all financial documentation relating to the sale of Canefields products, despite repeated documented and verbal requests from Canefields USA for P&L statements to set precedent and for record keeping purposes.
- Advantus has withheld all profits arising from the sale of Canefields products.
- Advantus has withheld all expense reimbursement, and has paid out no compensation of any kind or form to Canefields USA.
- The failure to supply any financial data and the withholding of profits and compensation has irreparably damaged Canefields USA, and is a complete breach of any and all intent to formalize an agreement.
- Advantus irreparably compromised and damaged Canefields USA by failing to be aware of category closure timelines of a key product category at United Stationers, and thus missing a crucial deadline.
- Advantus irreparably compromised and damaged Canefields USA by failing to execute a supply arrangement with Staples for Canefields copy paper, despite Staples key personnel and Advantus' own representative having acknowledged that the Canefields solution brought with it the lowest price point.

- While the above crucial USSCO deadline was missed and Staples opportunity lost, it came to our attention that Advantus was busy acquiring additional / separate product lines. It is clear to Canefields USA that Advantus lacks the focus and operational organization needed to effectively represent Canefields in our major industry category.
- Advantus has compromised the progression of Canefields USA with key accounts by virtue of their reluctance to supply major prospects with Canefields paper for testing and trialing purposes, thereby damaging Canefields USA.
- Advantus has declined to engage key customers with marketing dollar allowances, and minimized all marketing dollar allowances with crucial accounts and prospects.
- Advantus has not promoted the Canefields product lines within key industry channels, despite setting forth clear indications of the ability to do so.
- Advantus has not followed through on any promises to develop pressure sensitive label products using Canefields paper.
- Advantus has declined promoting Canefields dated goods, a key product category.
- It has become clear that Advantus lacks the logistical capabilities needed to effectively distribute Canefields copy paper. Advantus had warranted to Canefields USA that all Canefields products could "ride along" with other various Advantus product lines under Advantus vendor numbers, thereby contributing to operational efficiencies for Canefields USA. Instead, Advantus has kept this flagship Canefields product separate from all their other lines, resorted to using *Canefields* existing logistical solutions, and demonstrated extreme reluctance to improve warehousing and shipping capabilities as required. This misrepresentation on the part of Advantus has compromised and damaged Canefields USA, and is breach of any intent to reach an agreement or any arrangement that would actually bring with it the ability to maximize the success of Canefields in the marketplace.
- Advantus personnel have been inaccurately indicating throughout the Office Products Industry that Advantus has "bought" Canefields. This is a complete misrepresentation.
- Advantus has breached all forms of intent to reach an agreement, employed tactics to marginalize the roll of Canefields USA, and worked to strategically take advantage of a perceived position of weakness on the part of Canefields USA in contract negotiations, while not performing the extent of their promised roles and responsibilities thereby irreparably damaging and compromising Canefields USA.
- Advantus personnel lack the knowledge of the paper industry, paper based office supplies, market positioning, and crucial sustainability issues to effectively represent and expand the Canefields market presence in a manner consistent with the culture and goals of Canefields USA, or in any manner.
- Directive from Morgan Raj.

**RESOLUTION:**
It is the intent, for now, of Canefields USA to amicably unwind the association with Advantus in a mutually beneficial, collaborative manner – instructions and procedure for which are to follow under separate cover. It is my sincere hope that Advantus choose to work in cooperation with Canefields USA to speed this process.

Regards,

Jeff Allen / CEO
Canefields USA

# EXHIBIT 7

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Advantus Corp., a Florida corporation ("CLAIMANT" or "Advantus")

And

Jeff Allen and
CanefieldsUSA, LLC, a Delaware Limited Liability Company ("RESPONDENTS" or "CanefieldsUSA")

Case Number: 33 155 00278 12-

## AWARD OF ARBITRATOR

I, BERNARD NACHMAN, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties on August 19,2012, and having been duly sworn, and having duly heard the proofs and allegations of the Claimant, and the Respondent having failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association, hereby finds, as follows:

1.     Sometime between the preliminary hearing of January 24, 2013 and the final hearing of March 12, 2013, Jeffrey Allen, who was a Correspondent in this matter, individually filed a Chapter 7 petition for bankruptcy protection under the Unites States Bankruptcy Code. This matter is therefore stayed as to Mr. Allen individually. This stay does not, however, affect Advantus' right to proceed forward with the arbitration as to CanefieldsUSA, who, in accord with the terms of the contract is the party responsible for performing certain of the services in dispute and who would have been the payee of the distributorship fees under Section 4 of the contract between the parties. See, e.g., *In re* Sun-Ming Sheu, 2009 WL 1794473 (Bankr. E.D.N.Y. 2009); *In re* Donald J. McCormick, 381 B.R. 594 (Bankr. S.D.N.Y. 2008). At the arbitration, I contacted Randy Schaal, bankruptcy counsel for Mr. Allen to advise him that the arbitration would not proceed as to Mr. Allen individually, but would proceed as to CanefieldsUSA. He confirmed during this conversation that Canefields USA had not filed bankruptcy and that, as Mr. Allen did not claim the company as exempt property, he did not care if we proceeded as to CanefieldsUSA. He further advised that the membership interest in CanefieldsUSA now belonged to the bankruptcy trustee if we wished to contact him, but acknowledged that there was no stay as to CanefieldsUSA.

2.     CanefieldsUSA participated in the arbitrator appointment process but never filed any substantive response in this proceeding to Advantus' September 6, 2012 demand for arbitration. CanefieldsUSA failed to appear at the final hearing. Advantus appeared at the final hearing and I took live testimony from two of its corporate officers.

3.     CanefieldsUSA and Advantus are parties to a distributorship contract dated August 19, 2012.



**EXHIBIT**

B

4.     This is the second arbitration proceeding with the AAA between these parties.  In July 2012 Advantus filed a Demand for Arbitration.  Prior to an arbitrator being appointed to oversee the case, CanefieldsUSA filed a letter acknowledging that Advantus had cured any claimed breach and that the parties' contract of April 2012 (an attachment to both arbitration demands) was in full force and effect. Further, CanefieldsUSA requested that Advantus withdraw the demand for arbitration as moot and agreed to pay $10,000 in attorneys' fees to Advantus in accord with Section 10(f) of the contract. CanefieldsUSA never paid Advantus this $10,000 , and is indebted to Advantus in that amount. .(Although Advantus was fully authorized to offset these fees from any amounts otherwise due as distributor fees under the contract, Advantus has not taken the offset).

5.     Based upon the foregoing, Advantus withdrew its prior demand for arbitration on July 10, 2012.

6.     Advantus remains in compliance with its obligations under the contract.

7.     After the withdrawal of that arbitration demand, CanefieldsUSA ceased complying with Section 3 of the contract between the parties.  These breaches included, without limitation: (i) the failure to provide support on the OEM side of the business; (ii) shutting down the Canefields USA North American website (without allowing Advantus to restart it); (iii) the failure to assist with product sourcing, specifications and testing; (iv) the failure to call on key customers in the OEM channel; and (v) the failure to manage the national force of representatives.  Additionally, on at least one occasion in the summer of 2012, Canefields USA violated Article 9's exclusivity provision in attempting to directly sell Canefields USA's product to an OEM customer, completely bypassing and thwarting Advantus' exclusive distribution rights for North America, and on another occasion took funds belonging to Advantus on a sale to the University of Virginia, in the amount of $1,340.00, for which Canefields USA is indebted to Advantus.

8.     Each of these material breaches of the contract by Canefields USA constitutes a breach of a prior dependent covenant upon which Advantus' distributorship fee payment obligations to Canefields USA are based under Section 4 of the contract.  See, e.g., Toyota Tsusho America, Inc. v. Crittenden, 732 So.2d 471 (Fla. 5th DCA 1999) and Marshall Construction, LTD. V. Coastal Sheet Metal & Roofing, Inc., 569 So.2d 845 (Fla. 1st DCA 1990).  These breaches also impact Advantus' ability to comply with Section 6(b)'s minimum sales requirements under the contract.  Advantus has paid $15,000 to Canefields USA as "advances" under the contract for which Canefields USA has failed to perform services, and Advantus is therefore entitled to be reimbursed by Canefields USA in that amount..

9.     Section 10(f) of the contract provides the arbitrator with the authority to award attorneys' fees and costs to the prevailing party.  Advantus has incurred attorney's fees in the amount of $23,295, and non AAA expenses of $66.00

Accordingly, I AWARD as follows:

(1)     As a result of Canefields USA's past and ongoing breaches of the contract, Advantus' obligations to make any of the distributorship fee payments to Canefields USA as called for in Section 4, and the minimum sales requirements of paragraph 6(b) of the contract are discharged.  The contract otherwise remains in full force and effect.

(2)     Respondent, Canefields USA,  shall pay to Claimant, Advantus the sum of $56,551.00 principal consisting of $26,340.00 in damages, $22,847.72 in Claimant's attorney's fee for this arbitration, $4.600.00 in American Arbitration Association administrative fees for this arbitration, all of which have been prepaid to AAA by Claimant for which it is entitled to be reimbursed, $1,500.00 in compensation for the arbitrator, which has been prepaid by Claimant to AAA, for which it is also entitled to be reimbursed, and $66.00 in other expenses, all of which shall accrue interest hereafter in accord with Florida's post-judgment interest rate.

(3)     This Award is in full settlement of all claims submitted to this Arbitration.


I, Bernard Nachman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Dated February 20, 2013                    /s/ Bernard Nachman_____

                                           Bernard Nachman, Arbitrator