IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| ADVANTUS, CORP.,<br>a Florida Corporation, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| | : | 3:13-cv- 01430 |
| -against - | : | (TJC/PDB) |
| | : | |
| JEFF ALLEN, an individual, | : | |
| BERT HERRING, an individual, and | : | |
| BIO FIBER SOLUTIONS INTERNATIONAL, INC., | : | |
| a California corporation, | : | |
| | : | |
| Defendants. | : | |

**JEFF ALLEN'S RENEWAL OF HIS MOTION TO COMPEL DISCOVERY AND FOR A
PROTECTIVE ORDER PURSUANT TO F.R.C.P. 26 AND 37
AND IN OPPOSITION TO ADVANTUS' MOTION TO STAY DISCOVERY;
TEMPORARY RELIEF IS REQUESTED**

Jeff Allen, a Defendant and Third-Party Plaintiff in the above-entitled action, by and through his attorneys, hereby renews his motion to compel discovery previously filed on August 25, 2014 (Dkt. No. 70). For the reasons set forth below, Allen's motion for discovery should be granted as set forth herein and the depositions currently scheduled should be adjourned pending compliance with discovery.

Furthermore, Allen respectfully requests that this Court ***stay the depositions currently scheduled for December 16 through 18 pending decision on this motion***. As explained herein, Defendant Allen cannot effectively participate in depositions without the information requested in this motion. Since defendant and his counsel will be travelling from Albany, New York, they do not want to make travel plans now and then incur costs in cancelling travel plans if the motion is ultimately granted, nor do they want to begin depositions but leave the depositions open until

1

full discovery is provided, which would cause defendant and his counsel to make two trips to Jacksonville, where one would suffice, thus doubling their cost.

## LOCAL RULE CERTIFICATION

The undersigned certifies that counsel for Defendant/Third Party Plaintiff Allen conferred in good faith with Advantus' counsel regarding this Motion, and that Counsel for Advantus Corp., Kevin Carpenter and Harry Chernek do not consent to such relief.

## INTRODUCTION

On August 25, 2014, Defendant Allen filed a Motion to Compel Discovery and for a Protective Order pursuant to F.R.C. P. 26 and 37 and in opposition to Advantus' Motion to Stay Discovery (Dkt. No. 70). In his motion to compel, Allen alleged, among other things, that Advantus improperly withheld information and documents responsive to Allen's demands, while at the same time raising unfounded objections to Allen's demands (Dkt. No. 70, p. 2).[1] Allen also sought a protective order excusing Allen from appearing for depositions until such time as Advantus complied with Allen's discovery demands (Dkt. No. 70, ps. 21-22).

On October 8, 2014, the Court issued an order directing Advantus, Carpenter and Chernek to respond to "Allen's discovery requests by no later than November 3, 2014, or within 10 days of the entry of any protective order entered by the Court" (Dkt. No. 86). The Court denied Allen's motion to compel and for protective order as moot based on Advantus', Carpenter's, and Chernek's promise to comply with Allen's demands subject to a protective order (Dkt. No. 86, p. 3).

---

[1] A true copy of Jeff Allen's Original Motion to Compel Discovery and for a Protective Order including the quotation in full of each interrogatory and request for production to which this motion is addressed, along with Advantus' quotation in full of each objection and grounds therefor as required by Local Rule 3.04(a) is attached hereto as Exhibit H. In the interest of judicial economy, the movant adopts and incorporates herein the full quotations included in Allen's Original Motion (Dkt. No. 70, pp. 2-18).

On October 23, 2014, the parties filed a Stipulation for Protective Order setting forth their agreement with respect to the confidentiality of documents and information to be disclosed by the parties in this action (Dkt. No. 91). In the interim, the parties agreed to schedule mediation and depositions for the week of December 15, 2014 in Jacksonville Florida.

On November 3, 2014, Advantus' served its Supplemental Responses to Allen's discovery demands by e-mail. (A duplicate of Advantus' Supplemental Responses is attached hereto as Exhibit A). In its Supplemental Response to Allen's Request for Production No. 7, which sought communications between the defendants and Joe Utzurrum, Esq., Advantus provided the following response:

> *Advantus objects to request for production number 7 because it calls for production of documents protected by the common interest doctrine. Joe Utzurrum represents parties that are involved in litigation with Defendant Allen involving similar issues as Advantus' dispute with Defendant Allen herein. Accordingly, Mr. Utzurrum and counsel for Advantus have a common interest in sharing information. Such sharing of information is protected by the common interest doctrine.*

See Exhibit A. In response to Request for Documents Nos. 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16 and 19, Advantus response was as follows: "*Advantus will produce all responsive documents in its care, custody or control.*" Exhibit A.

On the following day, November 4, 2014, the undersigned received a CD-ROM containing 43,140 pages of documents produced by Advantus in response to Allen's request for production of documents. The 43,140 pages of documents were not organized or labeled to correspond to the categories in Allen's Request for Production of Documents. The only identification provided for the documents produced was the Bates number for each document. A print screen shot of a portion of the documents produced is attached hereto as Exhibit B.

On November 4, 2014, the undersigned wrote to Advantus' counsel pursuant to Local

Rule 3.01(g) advising counsel that Advantus' Supplemental Responses were unacceptable and in

violation of Rule 34(b)(E)(i). (A duplicate of the undersigned's Good Faith Letter is attached

hereto as <u>Exhibit C</u>).  The letter also asked Advantus to produce documents listed in its Privilege

Log that were not subject to attorney-client privilege, work-product doctrine and the common

interest doctrine. See <u>Exhibit C</u>.   The letter gave Advantus until Wednesday, November 12,

2014, to properly comply with Allen's discovery demands.

On November 12, 2014, the undersigned and Alan Wachs, Esq., Advantus' attorney, had

a conference call to discuss Advantus' intent to comply with Allen's discovery demands.  Mr.

Wachs told the undersigned that a detailed letter addressing Allen's concerns was coming in the

mail. On November 13, the undersigned received Mr. Wachs' November 12, 2014 letter, along

with a new CD-ROOM containing documents Bates stamped ADV4-000001-ADV4-043030.  A

copy of Alan Wachs, Esq.'s Letter is attached hereto as <u>Exhibit D</u>.

In response to the undersigned's request that Advantus' responses to Allen's demands

comply with Rule 34 by producing documents organized and labeled to correspond to Allen's

requests for production of documents, Advantus responded as follows:

> Advantus' responsive documents fall within the following
> categories: documents Bates stamped Advantus4-000001 through
> Advantus4-043030 are responsive to Request Numbers 1-6, 9-11,
> and 13-16.   The documents Bates-stamped Advantus 4-043031
> through Advantus 4-043140 are responsive to Jeff Allen's Request
> for Production 17-19.  Advantus has also enclosed with the hard
> copy of this letter, a DVD containing the native .msg email
> communications responsive to Request for Productions 1-6, 8-11,
> and 13-16 with the files broken into folders corresponding to the
> responsive e-mail accounts from which they were sent or received
> and which are sortable and searchable by subject line.

[See Exhibit D]. A print screen shot of the folders containing the documents produced by Advantus in its second CD-ROOM is attached hereto as <u>Exhibit E</u>. The documents contained in the second CD-Room are not bates stamped and not organized or labeled in any way as to allow Allen to identify which documents are responsive to his specific requests for documents. In response to Advantus' November 12, 2014 letter, the undersigned wrote to Advantus' counsel, once again, advising counsel that Advantus' production of documents was still inadequate for failure to link the documents produced to the particular items set forth in the request. A copy of de Oliveira's November 14, 2014 letter is attached hereto as <u>Exhibit F</u>. In the letter, the undersigned asked for an immediate response from Advantus.

Counsel exchanged e-mail communications and had one telephone conference to discuss Allen's objections to Advantus' production of documents. Copies of said communications are attached hereto as <u>Exhibit G</u>. Advantus continued to insist it had satisfied its obligations under the federal rules. As a result, the present motion follows due to the urgency of having this issue resolved reasonably in advance of the upcoming depositions, so that Allen will have the benefit of the discovery.

Advantus' Supplemental Responses to Allen's discovery demands fail to produce documents not protected by the attorney-client, work product or common interest doctrine and, because Advantus' production of 43,140 pages of documents without properly organizing it and labeling it to correspond to the categories in Allen's document request violates Rule 34(b)(E)(i). Advantus' second CD-Room contains documents that are not bates stamped and not organized in folders to correspond to Allen's request for production. Therefore, the Court should grant Allen's motion to compel and direct Advantus to produce all documents in accordance with Rule 34(b)(E)(i).

The Court should also direct Advantus to produce all documents listed on its Privilege Log for an *in camera* inspection by the Court. To the extent that the attorney-client, work product or common interest doctrine does not protect such documents, Advantus should be ordered to produce said documents.

The Court should further hold the depositions of the parties in this action in abeyance pending a decision on Allen's present motion and to permit Allen a reasonable time to inspect all documents produced by Advantus in accordance with this Court's order prior to conducting depositions. Allen is hoping for a decision on this sooner and later due to the difficulty of making travel arrangements from Albany, New York to Jacksonville, Florida.

Finally, the Court should grant Allen's attorney's fees and costs incurred in connection with filing the present motion due to the repetitive nature of the discovery violation.

## ARGUMENT

**I.     The Court Should Sanction Advantus for Producing 43,140 pages of Documents Without Indicating How These Documents Corresponded to Allen's Discovery Demands.**

Federal Rule of Civil Procedure 34, in its pertinent part states that "a party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request." F.R.C.P. Rule 34(b)(E)(i) (emphasis added). "Rule 34 is generally designed to facilitate discovery of relevant information by preventing 'attempt[s] to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents." *See Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 U.S. Dist. LEXIS 63538, *8 (S.D. Fla. 2009) (citation omitted).

With the purpose of Rule 34 in mind, courts have required parties producing a large number of documents in response to discovery demands to "organize and label" the documents

which are produced for inspection. *See Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (finding discovery sanctions were warranted where producing party failed to organize and label the 7,000 documents it produced); *Id. citing Govas v. Chalmers*, 965 F.2d 298, 303 (7th Cir. 1992) (holding dismissal of plaintiff's claim was an appropriate sanction because the plaintiff has demonstrated "a pattern of dilatory and evasive discovery tactics..."); *ITT Life Insurance Company v. Thomas Nastoff, Inc.*, 108 F.R.D. 664, 666 (N.D. Ind. 1985) (construing then Rule 33(c) which permitted a party to produce business records in response to an interrogatory but required the party "to specify the records from which the answer may be derived ... [with] sufficient detail to permit the interrogating party to locate and to identify ... the records from which the answer may be ascertained"); *Ferrito v. IKON Office Solutions, Inc.*, 2000 U.S. Dist. LEXIS 22336, 2000 WL 1477188 (D. Kan. 2000) (stating the production of 2,000 pages of documents that were neither Bates stamped nor otherwise organized did not satisfy Rule 34).

Advantus and Third-Party defendants violated Rules 33 and 34 by making no attempt to organize, name or label the numbered documents. PDFs were not named or labeled other than with numbers – numbers referenced to no table of contents or other index. Their narrative responses offered the unhelpful "Advantus will produce all responsive documents in its care, custody or control" without any reference to available Bates numbers. While the Defendants' documents were identified by Bates numbers, none of Defendants' responses identified any of the Bates numbers of the documents responsive to any of the document production requests in interrogatories. *See Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88 (1st Cir. 2012) "The same flaws mar the [non-movants'] invitation that the [movant] sift through documents previously delivered in search of the documents that [movant] requested under Rule 34. At the very least, the [movant was] entitled to responses or objections addressed to "each item or category [of items]."

Fed. R. Civ. P. 34(b)(2)(B)." Here as in *Mulero-Abreu*, Defendants "never supplied such an index, suggesting instead that [Allen] find the needle in the haystack." *Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d at 93.

Advantus' and Third-Party defendants' subsequent responses stating that "documents Bates-stamped Advantus4-000001 through Advantus4-043030 are responsive to Request Numbers 1-6, 8-11, and 13-16" and that the documents Bates-stamped Advantus 4-043031 through Advantus 4-043140 are responsive to Jeff Allen's Request for production Numbers 17-19" still fails to identify what documents are responsive to Allen's individually numbered requests. Advantus and Third-Party defendants' haystack belatedly delivered in two CD-ROMs to Allen imposed upon Allen a number of difficult puzzles – each of which Advantus and Third-Party defendants knew patently violated all express material requirements of Fed. R. Civ. P. 34(b)(2)(B), particularly in light of the prior motion on these issues. First, Allen had to review and guess the operative function of each produced PDF designated solely with a number but without offering any other name or explanation regarding the specific requests made by Allen. Next, Advantus and Third-Party defendants' haystack dumped on Allen required that Allen learn enough about the numbered but unnamed documents in the very large haystack to recognize and then commence the next decoding process – determining which documents corresponded to the categories in Allen's document request. Grouping the 43,140 pages of documents into different folders, without any reference as to which request for production the documents were in response to, still requires Allen to guess which documents are responsive to his individually categorized requests.

While Rule 34's operative requirement mandated Advantus and Third-Party defendants to "produce documents as they are kept in the usual course of business," it is impossible for

Allen to review 43,140 pages of unnamed documents to determine whether such documents were "kept in the usual course of business." The sole purpose for dropping 43,140 pages of unnamed documents upon Allen would appear to be to retaliate against Allen for attempting to invoke the jurisdiction of the Honorable Court to uphold the Rule of Law.

The option to produce business records only applies when "the response sufficiently specifies the records that must be reviewed." *Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 158 (D.P.R. 2010). That 'sufficient specification' requirement has been explained to mean that "a party must specify the records from which the answers can be ascertained in sufficient detail to permit the interrogating party to locate and identify the records." *Calhoun v. Liberty Northwest Ins. Corp.*, 789 F. Supp. 1540, 1550 (W.D. Wash. 1992); *see also American Intern. Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 410 (N.D. Ill. 2007) (documents must either be produced in the manner normally maintained or organized to correspond to the requests); *Ferrito v. IKON Office Solutions, Inc.*, 200 WL 147718 (D. Kan. 200) (production of 2,000 pages of documents that were neither Bates stamped no otherwise organized did not satisfy Rule 34); *Cambridge Electronics Corp v. MGA Electronics, Inc.*, 227 FRD 313 (C.D. Cal. 2004). Also, the plain text of Fed. R. Civ. P. 33(d)(1) would appear to require specificity: "Specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could...." Fed. R. Civ. P. 33(d)(1).

A number of courts have frowned on document dumps, and have done something about them. In *Pass & Seymour, Inc., v. Hubbell Inc.,* 2008 U.S. Dist. Lexis 85830 (N.D.N.Y. September 12, 2008), a party produced over 400,000 documents, without indexing or labeling them in any way. The court held that the absence of "any index or table to help illuminate the

organization regime utilized by [the producing party] falls short of meeting the obligations imposed under Rule 34(b)(2)." The producing party argued that the documents produced were searchable, but the court said that was not good enough. It required that the party producing the documents identify the custodian of the documents, provide a description of the filing system, and assure everyone that the documents were produced in the order in which they were maintained in the ordinary course of business. In *Residential Constructors LLC v. Ace Property and Casualty Insurance Co.*, 2006 U.S. Dist. LEXIS 36943 (D. Nev. 2006), the court held:

> The Court disagrees that simply producing for inspection 41 boxes of documents, or producing documents in a computer imaged format, complies with Plaintiff's obligation under Rule 34. Although Plaintiff alleges that the documents are organized in the manner in which they kept in the usual course of business, Plaintiff has gathered these documents together from different entities and locations and has assembled the documents together in the boxes, which have now been imaged onto a computer data base. Clearly some form of table of contents or index of the materials produced should be provided.

Both opinions cite other decisions to the same effect. Other useful cases are *In re Sulfuric Acid,* 231 F.R.D. 351 (N.D. Ill. 2005), *Covad Communications Co. v. Revonet,* 254 F.R.D. 147 (D.C. D.C. 2008), *GP Industries, LLC v Bachman,* 2008 WL 1733606 (D.Neb. April 10, 2008), *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606 (D.R.I. 2001), *Coopervision, Inc. v. Ciba Vision Corp.*, 2007 WL 2264848 (E.D. Tx. Aug. 6, 2007), and *MGP Ingredients, Inc v. Mars, Inc.,* 2007 WL 3010343 (D. Kan. Oct. 15, 2007).

Although the undersigned has been unable to find precedent in the Middle District of Florida on point, a decision from the Southern District of Florida is instructive. In *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 U.S. Dist. LEXIS 63538 (S.D. Fla. 2009), the Court held that a "producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated

documents for the responding part to inspect." *See Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 U.S. Dist. LEXIS 63538, *8 (S.D. Fla. 2009) *citing* Fed. R. Civ. P. 34 advisory committee's note (1980 amendment follows recommendation in report noting it to be "not rare for parties deliberately to mix critical documents with other in the hope of obscuring significance"). As a result, the court in *Armor Screen, supra,* held that "[w]hile Rule 34 does not obligate a producing party to per se organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should 'organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests.'" *Id.* (citation omitted).

Here, Advantus was resistant to discovery and was ordered to produce documents responsive to Allen's discovery demands by November 3, 3014 (Dkt. No. 86, p. 3). The 43,140 unnamed, unlabeled and unorganized documents produced by Advantus in a CD-ROM on November 4, 2014 and subsequently on November 13, 2014, violate Advantus' discovery obligations under Rules 33 and 34. The second DC-Room produced by Advantus contains documents that are not bates stamped nor organized to correspond to Allen's requests for documents. Allen should not be expected to review 43,140 pages of documents and try to identify what documents are responsive to his demands and then compare them to review another CD-Room with the same 43,140pages of documents and try to identify the bates number for each document. The manner in which the 43,140 pages of documents are copied to a CD-ROM makes it impossible to determine whether such documents were produced by Advantus as they are kept in the usual course of business. F.R.C.P. Rule 34(b)(E)(i). Advantus' production of 43,140 pages of documents without any reference to how such documents are responsive to

Allen's corresponding demands is intended to harass and increase the cost of litigation. Advantus' conduct also violates Rule 34(b), it is not justified and, as a result, sanctions are appropriate. *See Stiller v. Arnold*, supra, at 71.

## II.   Advantus Should Produce All Documents Listed in Its Privilege Log, Except For Any Documents Protected by the Attorney Client Privilege

Advantus produced a Privilege Log along with its Supplemental Responses to Allen's discovery demands asserting attorney-client privilege, work product doctrine and/or common interest doctrine as the reasons why Advantus should not produce such records. Because the documents listed in Advantus' Privilege Log are not protected by attorney-client privilege, work product doctrine and/or common interest doctrine, the Court should compel Advantus to produce them. In the alternative, the Court should direct Advantus to produce such documents for *in camera* inspection so the Court can determine whether the communication Advantus claims to be privileged is in fact privileged.

a) Advantus' Communications Are Not Protected by the Attorney-Client Privilege

In Advantus' Privilege Log, Advantus asserts the attorney-client privilege and work product doctrine to communication dated 9/5/13 between Harry Chernek and Virginia Alvers regarding "Forwarding e-mails to be provided to counsel for review." Exhibit A. Clearly such communication/s between Harry Chernek and Virginia Alvers is not protected by the attorney-client privilege. *See International Tel. & Tel. Corp. v. United Tel. Co.*, 60 F.R.D. 177, 185 (M.D. Fla. 1973) (communications among employees and agents of the corporations at the direction, but not in the presence of an attorney is not protected by the attorney-client privilege).

"The attorney-client privilege is a fragile one which will not be available unless all of the elements of the privilege are present." *International Tel. & Tel. Corp., supra*, at 184. The elements of the privilege are as follows: "(1) Where legal advice of any kind is sought (2) from a

professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* fn. 6 *citing* 8 Wigmore, Evidence § 2292 at 554 (McNaughton rev. 1961). The voluntary disclosure to a third party of the privileged material waives the privilege. *Hayas v. Geico Gen. Ins. Co.*, 2014 U.S. Dist. LEXIS 149772, at *3 (M.D. Fla. 2014) (citation omitted); *see also Lockheed Martin Corp. v. L-3 Communs. Corp.*, 2007 U.S. Dist. LEXIS 54606, at *16, 2007 WL 2209250 (M.D. Fla. 2007) ("A client waives the attorney-client privilege 'if it interjects into the case an issue that in fairness requires an examination of otherwise protected communications.'") (citation omitted).

Although Chernek's communications with his counsel made in confidence for the purpose of obtaining legal advice is subject to the privilege, communications between Chernek and a third party (Ms. Alvers) is not. The mere fact that Chernek subsequently forwarded his communications with Ms. Alvers to counsel does not make his communications with Ms. Alvers privileged. As a result, Advantus should be directed to produce all communications between Chernek and Alvers or any other third party related to the claims and defenses asserted in this action.

Furthermore, not all communication between Chernek, Carpenter and their counsel Alan Wachs is protected by the attorney-client privilege, *see International Tel. & Tel. Corp., supra*, at 184; *see also Lockheed Martin Corp.*, 2007 U.S. Dist. LEXIS 54606, at *15 *citing In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992), particularly where, like in the present case, an allegation of fraud is made. *See International Tel. & Tel. Corp., supra*, at 182

*citing Pollock v. United States*, 202 F.2d 281 (5th Cir. 1953) (holding that the attorney-client privilege was unavailable where evidence was introduced giving "color to the charge" of fraud).

Here, Allen should be permitted to inspect any documents exchanged between Advantus' officers, agents and employees, including Chernek and Carpenter, and Alan Wachs, Esq., concerning the existence of an Exclusive Distributorship Agreement between Advantus and Allen. Allen's claim that Advantus fraudulently represented to third parties, an arbitrator and this Court, the existence of an agreement that was never formalized defeats any assertion by Advantus that such communication is privileged. *See International Tel. & Tel. Corp. v. United Tel. Co., supra*, at 180. In fairness, Allen should be allowed to inspect what would be otherwise attorney-client privileged communication because Allen has introduced evidence giving color to the charge of fraud in his counterclaims and third party claims (Dkt. No. 43, ps 16-20). For example, Allen has produced evidence Advantus' claim that Allen violated a non-compete agreement based on his signature on the "Draft Agreement," is fraudulent because Advantus knows that such Agreement was never formalized. The Draft Agreement was never executed by Advantus and was rejected by Advantus (Dkt. No. 69-2, p. 2). Therefore, communications between Alan Wachs, Esq. and Advantus' officers and employees concerning this subject is not protected by the attorney-client privilege.

In addition, the attorney-client privilege only extends to communications not facts. *EEOC v. Dimare Ruskin, Inc.*, 2012 U.S. Dist. LEXIS 24952, *6 (M.D. Fla. 2012). A party may not refuse to "disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney." *Id.* (citation omitted). Forwarding messages to counsel for review does not insulate the messages from disclosure. *See Lockheed Martin Corp.*, 2007 U.S. Dist. LEXIS 54606, at *17 ("merely transmittal or scheduling

documents [that] were not for the purpose of securing legal services, an opinion on law, or assistance in some legal proceeding … are not within the attorney-client privilege.")

Therefore, the attorney-client privilege is not applicable to the communication dated 9/5/13 between Harry Chernek and Virginia Alvers or to any communication involving the alleged agreement between Allen and Advantus.

b) Advantus' Communications Are Not Protected by the Work Product Doctrine

Advantus' Privilege Log asserts the protection of work product doctrine to the following communications:

| Date | Author | Recipient(s) | Document Type/ Subject Matter |
|---|---|---|---|
| 7/23/13 | Harry Chernek | Kevin Carpenter | E-mail summarizing Julian Grubbs' involvement in Bio Innovations obtained at the direction of counsel in anticipation of litigation |
| 7/23/13 | Harry Chernek | Kevin Carpenter | E-mail summarizing conversation with Julian Grubbs regarding interactions with Jeff Allen obtained at the direction of counsel in anticipation of litigation |
| 7/23/13 | Exchanges between Harry Chernek, Kevin Carpenter, Pete Levy, and Charlie Frohman | | E-mail exchanges forwarding shipping detail of Bio Fiber shipments obtained at the direction of counsel in anticipation of litigation |
| 7/23/13 | Exchanges between Harry Chernek, Kevin Carpenter, Pete Levy, and Charlie Frohman | | E-mail exchanges regarding initial conversation with Julian Grubbs obtained at the direction of counsel in anticipation of litigation |
| 7/23/13 | Harry Chernek | Kevin Carpenter | E-mail regarding Bert Herring obtained at the direction of counsel in anticipation of litigation |
| 7/25/13 | Harry Chernek | Kevin Carpenter | E-mail forwarding request for information regarding Bio Fiber and Bert Herring obtained at the direction of counsel in anticipation of litigation |
| 7/26/13 | Julian Grubbs | Harry Chernek | E-mail regarding costs and retainer obtained at the direction of counsel in anticipation of litigation |
| 7/26/13 | Harry Chernek | Kevin Carpenter | Forwarding e-mail from Julian Grubbs regarding costs and retainer obtained at the direction of counsel in anticipation of litigation |
| 09/05/13 | Harry Chernek | Virginia Alvers | Forwarding e-mails to be provided to counsel for review |
| 12/12/13 | Harry Chernek | Charlie Frohman | E-mail forwarding correspondence exchange with customer at the direction of counsel |

Because the communications Advantus seeks protection from disclosure ar not protected by the work product doctrine, the Court should direct Advantus to produce such communications.

"The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or that party's attorney acting for his client." *See FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596 (M.D. Fla. 1990). Work-product is not a privilege, but it is a qualified immunity from discovery. *See International Tel. & Tel. Corp., supra*, at 186 (citation omitted). The work product doctrine is not absolute. *United States v. Nobles*, 422 U.S. 225, 239, 94 S. Ct. 2160, 45 L. Ed. 2d. 141 (1975); *See International Tel. & Tel. Corp., supra*, at 187 (the work product doctrine is limited and does not completely bar disclosure unless the attorney-client privilege is also implicated). The work product doctrine is not applicable if the materials being sought "(i) […] are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." F.R.C.P. Rule 26(b)(3)(A)(i) and (ii).

Here, Advantus claims that communications between Chernek and Carpenter and other individuals who were not Advantus' counsel or representatives are protected by the work product doctrine simply because such communication was allegedly "obtained at the direction of counsel in anticipation of litigation." The fact that the communication was obtained at the direction of counsel for purposes of this litigation does not make the communication a work product protected by Rule 26 (b)(3)(A). The communications between Chernek, Carpenter, Levy, and Frohman on 7/23/13, 7/25/13 and 7/26/13 occurred outside the presence of counsel and some four months before the Complaint in this action was filed on November 20, 2013 (Dkt. No. 1). The e-mails summarize discussions with Julian Grubbs - the president of the Company that sued

Allen in California, about Bio Fiber and about Bert Herring – former co-defendants in this action, and about "costs and retainer." These communications are not relevant to Advantus' claim against Allen in this case and, therefore, they are not communications created in anticipation of litigation against Allen. The communications concern litigation which Grubbs' companies, not Advantus, brought against Allen in California. The communications are relevant to Allen's claim that Carpenter and Chernek committed the tort of abuse of process by conspiring with other who would bring "other actions in California in an improper manner and for an ulterior purpose, namely to seize Allen's company (Canefields USA), to drive him out of the alternative fiber paper products industry entirely, and to deprive Allen of his livelihood thus securing a competitive advantage for itself" (Dkt. No. 43, p. 20). Advantus and its principals engaged in that conspiracy because they knew that Advantus could not assert any damages claims against Allen due to Allen's discharge in bankruptcy. Because the communications between Chernek, Carpenter and Grubbs are necessary for Allen's claim of abuse of process, without which Allen will be unable to "obtain their substantial equivalent by other means," the Court should direct Advantus to produce the communications dated 7/23/13, 7/25/13 and 7/26/13 listed on its Privilege Log.

The communications between Harry Chernek and Virginia Alvers dated 09/05/13 and Harry Chernek and Charlie Frohman dated 12/12/13 are also not protected by the work product doctrine simply because, after the fact, the communication was forwarded to counsel. In order to be protected the materials had to be prepared in anticipation of litigation. Simple forwarding communications to counsel at his request does not fall within the protections of the work product doctrine.

c) Advantus' Communications Are Not Protected by the Common Interest Doctrine

In addition to the refusal to produce documents in response to Allen's Request for Production No. 7, Advantus' Privilege Log asserts the protection of common interest doctrine to the following communications:

| Date | Author | Recipient(s) | Document Type/ Subject Matter |
|------|--------|--------------|-------------------------------|
| 8/30/13 | Joe Utzurum | Harry Chernek | E-mail regarding conference call |
| 09/11/13 | Exchanges between Harry Chernek, Joe Utzurrum and Alan Wachs | | E-mail exchanges regarding requests for information |
| 10/07/13 | Amber Sharpe | Alan Wachs; Joe Utzurrum | E-mail regarding conference call scheduling |
| 10/10/13 | Joe Utzurrum | Alan Wachs; Julian Grubbs; Harry Chernek | E-mail forwarding invoices and proof of payment |
| 10/10/13 | Joe Utzurrum | Alan Wachs; Julian Grubbs; Harry Chernek | E-mail forwarding draft business plan |
| 10/23/13 | Harry Chernek | Kevin Carpenter | E-mail exchange regarding TAA compliance |
| 11/01/13 | Amber Sharpe | Kevin Carpenter; Harry Chernek | E-mail forwarding correspondence requesting copies of discovery documents |

Because the common interest doctrine is not applicable to the above communications, the Court should direct Advantus to produce the communications to Allen.

The common interest doctrine is an exception to the general attorney-client waiver rule. *See Visual Scene, Inc. v. Pilkington Bros.*, 508 So. 2d 437, 440 (Fla. 3d DCA 1987); *see also Hayas v. Geico Gen. Ins. Co.*, 2014 U.S. Dist. LEXIS 149772, at *4 (M.D. Fla. 2014) (citation omitted). The doctrine enables litigants who share unified interests to exchange privileged information to adequately prepare for their cases without losing the protection afforded by the privilege. *See Visual Scene, Inc., supra*, at 440 (citation omitted). When determining whether materials are protected by the common interest doctrine, the Court must determine "(1) whether the original disclosures were necessary to obtain informed legal advice and might not have been

18

made absent the attorney-client privilege; (2) whether the communication was such that disclosure to third parties was not intended, and (3) whether the information was exchanged between the parties for the limited purpose of assisting in their common cause." See *Hayas*, *supra*, at *6 (citations omitted).

Here, Advantus invokes the privilege of the common interest doctrine to communications between California attorney Joe Utzurrum and Advantus' personnel concerning litigation in which Advantus has denied playing any role. If Advantus had no role in the litigation, the common interest doctrine is clearly inapplicable. The communications between the California players (Joe Utzurrum and Julian Grubbs and Harry Chernek and Alan Wachs, Advantus' attorney, are about conference calls (08/30/12), requests for information (09/11/13), invoices and proof of payment (10/10/12) and forwarding of a "draft business plan" (10/10/13).

The communications dated 08/30/12, 09/11/13, 10/10/12 and 10/10/13 were not made for the purpose of obtaining legal advice, neither were the communications exchanged for the purpose of assisting their common cause. Rather the sole motive of the communications was to assist and encourage Utzurrum to spite Allen by bringing claims against him in California, which were not claims Advantus could have possibly asserted. In short, Advantus' personnel were not seeking legal advice from Utzurrum as to California law, which was not at all relevant to any issues in dispute between Advantus and Allen, but simply to conspire with him in an effort to harm Allen by embroiling him in costly litigation in multiple forums when he lacked the resources to do defend himself and to oppress him by disabling him as a practical matter from ever protecting his rights.

The communications dated 10/07/13 and 11/01/13 are likewise not protected by the common interest doctrine. Upon information and belief, Amber Sharpe is an employee of Mr.

Wachs' law office.  Ms. Sharpe's communication dated 10/07/13 to Alan Wachs and Joe Utzurrum is not a communication from a client to a lawyer for the purpose of obtaining legal advice, neither it is made for the purpose of assisting their common cause.  Ms. Sharpe's communication dated 11/01/13, could be protected by the attorney client privilege.  *See United States v. Gumbaytay*, 276 F.R.D. 671, 679 (M.D. Ala.2011) (citations omitted) ("[i]n general, agents and subordinates working under the direct supervision and control of the attorney are included within the scope of the attorney-client privilege.").  However, since Advantus has not asserted the attorney client privilege over the 10/07/13 communication, the privilege is waived.  *See Lockheed Martin Corp. v. L-3 Communs. Corp.*, 2007 U.S. Dist. LEXIS 54606, *16, 2007 WL 2209250(M.D. Fla. 2007) (courts have held that a party who fails to assert the privilege timely waives the privilege).  Ms. Sharpe's communications to Chernek and Carpenter dated 11/01/13 is also not covered by the common interest doctrine because it is not a communication between a client and an attorney or an attorney representing another with the group of commonly aligned parties.  *See Visual Scene, Inc., supra,* at 440, fn 3 (citation omitted).  Advantus was not a party to the California case and actually received no benefit from it other than to spite Jeff Allen.

The communication dated 11/23/13 between Harry Chernek and Kevin Carpenter is also not protected by the common interest doctrine because an e-mail exchange involving TAA compliance is not a communication necessary for the purpose of assisting their common cause in this action.  TAA compliance has nothing to do with either the California or Florida litigations.

Therefore, the common interest doctrine is inapplicable to any communications between Advantus' officers and employees and Joe Utuzurrum, Esq.  As a result, Advantus should produce all documents responsive to Allen's Request for Production No. 7 and all documents

listed in its Privilege Log asserting the common interest doctrine (8/30/13, 9/11/13, 10/07/13, 10/10/13, 10/23/13 and 11/01/13).

**III.    Allen's deposition in this matter should be adjourned until such reasonable time after Advantus has complied with Allen's discovery demands.**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(c)(1) permits the Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. Rule 26(c)(1).   The party seeking a protective order "bears the burden of showing good cause and reasonableness." *In re Winn-Dixie Stores, Inc.*, 2007 U.S. Dist. LEXIS 53355, *4 (M.D. Fla. 2007), *citing McCabe ex rel. Fidelity Nat'l Fin., Inc. v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla 2006).

For the same reason that Allen sought a protective order after Advantus' initially refused to comply with discovery demands, Allen must seek a protective order here.   Advantus' production of documents continues to be far below was is required under the Federal Rules of Civil Procedure.   Advantus' production of 43,140 pages of documents in a CD-ROM without organizing such documents in a manner that Allen and his counsel may obtain, with reasonable effort, the documents responsive to Allen's request is unacceptable, violates Advantus' obligation under Rule 34, and it is intended to harass and increase the costs of this litigation.   It is virtually impossible for counsel and Allen to review the 43,140 pages of documents in advance of the depositions scheduled for December, 2014, and to be appropriately prepared to conduct such depositions in an appropriate and efficient manner.

## CONCLUSION

**WHEREFORE**, Defendant/Third Party Plaintiff Jeff Allen respectfully requests that this Honorable Court enter an Order:

(1) Granting Allen's motion to compel discovery and staying depositions pending decision on this motion;

(2) Directing Advantus to organize and label the 43,140 pages of documents produced to correspond to the categories in Allen's request for production;

(3) Directing Advantus to produce all documents listed on its Privilege Log, except for communication between Advantus Corp. and Alan Wachs, Esq., Chris Harris, Esq. or Kyle Jacobs, Esq. related to the subject matter of this action;

(4) Granting Allen an award for his attorneys' fees and costs for filing this Motion; and

(5) Granting such other and further relief as this Court deems just and appropriate.

Dated: November 25, 2014

Respectfully submitted,

**COOPER ERVING & SAVAGE LLP**

/s/ Carlo A. C. de Oliveira
Carlo A. C. de Oliveira, Esq.
Bar Roll No.: 516271
cdeoliveira@c*ererving.com
39 North Pearl Street
Albany, New York 12207-2797
(518) 449-3900
(518) 432-3111


s/Neil L. Henrichsen
Neil L. Henrichsen (FL Reg. No. 0111503)

nhenrichsen@hslawyers.com
HenrichsenSiegel
1648 Osceola Street
Jacksonville FL  32204
Tel: 904.381.8183
Fax: 904.381.8191
Local Attorney for Defendant Jeff Allen.


212097